[No. B108701. Second Dist., Div. Seven. Dec. 11, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
ANGEL M. MENDOZA, Defendant and Appellant.

**COUNSEL**

Valerie G. Wass, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General,

Jaime L. Fuster and Ana R. Duarte, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JOHNSON, J.**—Appellant, Angel M. Mendoza, appeals from a judgment of conviction for making a terrorist threat (Pen. Code, § 422)[1] and for dissuading a witness by force, or express or implied threat of force or violence (§ 136.1, subd. (c)(1)). He contends the evidence was insufficient to support the convictions. Alternatively, he argues in the event this court finds the convictions are supported by substantial evidence, then the concurrent sentence imposed for the second offense must be stayed under section 654.

We conclude substantial evidence supports the convictions. However, we agree that because both offenses were incidental to one objective the concurrent sentence imposed on the second conviction must be stayed. We therefore modify the judgment to stay punishment on the second conviction and affirm as modified.

### FACTS AND PROCEEDINGS BELOW

Appellant is a member of the Happy Town criminal street gang in Pomona. His brother, Ronald Mendoza, is also a member of the Happy Town street gang. By the time of trial Elva Arambula had known appellant and his brother for four or five years. She was familiar with them because she had been an associate of Happy Town until she gave birth to her first child.

Appellant's brother was arrested and charged with the murder of a Pomona police officer. On August 19, 1996, Arambula testified as a prosecution witness at his preliminary hearing. Appellant attended his brother's preliminary hearing accompanied by two other gang members, Raul Arvisu and Jorge Olmos, also known as "Tank" and "Jaspar."

Two days after Arambula testified at the preliminary hearing Arambula heard a knock on the side door of her home in Pomona. Arambula saw appellant outside the door. She noticed his mother stood at the gate approximately 15 feet away. After Arambula opened the door, appellant asked if she had read the newspaper. Arambula replied, "No, why?" Appellant told her she had "fucked up his brother's testimony," and that "[h]e was going to talk to some guys from Happy Town." Appellant then left. Arambula said appellant did not appear angry or upset.

[1]All further statutory references are to the Penal Code.

At trial Arambula testified she did not initially take appellant's words as a threat because appellant was always joking around. At trial she denied appellant's words alone frightened her.

Arambula recounted a different version at appellant's preliminary hearing. There she stated she became frightened by appellant's words and believed they meant "they were going to kill me for sure," "they were going to kill me," and "they were going to come back and shoot me."

Approximately 20 to 30 minutes after appellant left Arambula heard a car honking its horn outside. She looked out her front door and saw appellant's friend, Arvisu or "Tank," sitting in a car parked across the street from her home. He honked the car horn again and looked in her direction. Arambula did not go outside because she was afraid for her life.

A few minutes later Arambula's sister returned home and told Arambula "Tank" was looking for her. Arambula "put all the pieces together" and became convinced they would come back and do something to her "because she was a witness" against appellant's brother. She called the police.

Pomona Police Officer Timothy Bergmann responded to Arambula's call. Officer Bergmann was participating in the murder investigation involving appellant's brother. He had attended the preliminary hearing and at the hearing saw appellant, his friend Arvisu and another person. When Officer Bergmann arrived at Arambula's home Arambula seemed very upset, nervous and afraid. Arambula could not stand still, and kept walking to the front door to look out. Arambula told the officer that after she heard appellant's comments, she was afraid appellant would "come back with some Happy Town gang members and maybe hurt her or kill her."

Two hours later Officer Bergmann assisted in stopping a vehicle near Arambula's home. Arvisu, or "Tank," was driving and Jorge Olmos, or "Jaspar," was a passenger in the car.

At the time of trial in this case, Arambula had not yet testified in appellant's brother's pending murder trial.

Appellant was charged with one count of making a terrorist threat (§ 422) and with one count of dissuading a witness by force, or express or implied threat of force or violence (§ 136.1, subd. (c)(1)). A jury convicted appellant as charged. The trial court imposed a midterm sentence of three years for the conviction for dissuading a witness and imposed a two-year concurrent term for the conviction for making a terrorist threat.

Appellant appeals from the judgment of conviction.

## DISCUSSION

### I. Standard of Review of a Challenge to the Sufficiency of the Evidence to Support a Criminal Conviction.

■ "The proper test to determine a claim of insufficient evidence in a criminal case is whether, on the entire record, a rational trier of fact could find appellant guilty beyond a reasonable doubt. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576-578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]; *Jackson* v. *Virginia* (1979) 443 U.S. 307, 318-319 [99 S.Ct. 2781, 2788-2789, 61 L.Ed.2d 560].) In making this determination, the appellate court ' "must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." [Citations.] . . . "[O]ur task . . . is twofold. First, we must resolve the issue in the light of the *whole record* . . . . Second, we must judge whether the evidence of each of the essential elements . . . is *substantial* . . . ." ' (*People* v. *Johnson, supra*, 26 Cal.3d at pp. 576-577, italics in original.)

"Although the appellate court must ensure the evidence is reasonable in nature, credible, and of solid value (*People* v. *Johnson, supra*, 26 Cal.3d at p. 576), it must be ever cognizant that ' "it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends . . . ." ' (*People* v. *Thornton* (1974) 11 Cal.3d 738, 754 [114 Cal.Rptr. 467, 523 P.2d 267], disapproved on other grounds, *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].) Thus, if the verdict is supported by substantial evidence, this court must accord due deference to the trier of fact and not substitute its evaluation of a witness's credibility for that of the fact-finder. (*People* v. *Samuel* (1981) 29 Cal.3d 489, 505 [174 Cal.Rptr. 684, 629 P.2d 485]; *People* v. *Kerr* (1951) 37 Cal.2d 11, 15 [229 P.2d 777].)" (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303-304 [228 Cal.Rptr. 228, 721 P.2d 110].)

We review appellant's claims with these standards in mind.

### II. Substantial Evidence Supports Appellant's Conviction for Making a Terrorist Threat.

The jury found appellant guilty of making a terrorist threat in violation of section 422. This section provides: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement is to be taken as a threat,

even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison. . . ."

 Appellant contends his comments were insufficient to constitute a terrorist threat within the meaning of section 422 because they were not unequivocal or specific, did not threaten the commission of a crime, and did not place the victim in a state of sustained fear.

We agree the words themselves—"you fucked up my brother's testimony. I'm going to talk to some guys from Happy Town"—did not articulate a threat to commit a specific crime resulting in death or great bodily injury. (Compare *People* v. *Brown* (1993) 20 Cal.App.4th 1251, 1253 [25 Cal.Rptr.2d 76] [defendant told victims if they called the police, he would kill them];[2] with *People* v. *Garrett* (1994) 30 Cal.App.4th 962, 965 [36 Cal.Rptr.2d 33] [" 'I'm coming there to put a bullet in your head' "]; *In re David L.* (1991) 234 Cal.App.3d 1655, 1658 [286 Cal.Rptr. 398] [defendant stated he was going to shoot the victim]; *People* v. *Stanfield* (1995) 32 Cal.App.4th 1152, 1155 [38 Cal.Rptr.2d 328] [defendant was going to hire gang bangers to kill or get him].)

 However, the determination whether a defendant intended his words to be taken as a threat, and whether the words were sufficiently unequivocal, unconditional, immediate and specific they conveyed to the victim an immediacy of purpose and immediate prospect of execution of the threat can be based on all the surrounding circumstances and not just on the words alone. The parties' history can also be considered as one of the relevant circumstances. (See, e.g., *People* v. *Martinez* (1997) 53 Cal.App.4th 1212, 1218 [62 Cal.Rptr.2d 303] [the meaning of the defendant's threat must be gleaned from the words and all of the surrounding circumstances]; *People* v. *Gudger* (1994) 29 Cal.App.4th 310, 321 [34 Cal.Rptr.2d 510] [it is necessary to review the language and context of the threat to determine if the speaker had the specific intent the statement was to be taken as a threat]; *People* v. *Stanfield, supra,* 32 Cal.App.4th 1152, 1159 [the statute does not concentrate

---

[2]Appellant also relies on this division's recent decision in *People* v. *Ramirez* (1997) 54 Cal.App.4th 888 [62 Cal.Rptr.2d 644] which discusses the effect of conditional threats. However, the Supreme Court has since granted review (July 16, 1997 (S061526)) and that decision is no longer citable. (Cal. Rules of Court, rules 976, 977, 979.)

on the precise words of the threat but whether the threat communicated a gravity of purpose and immediate prospect of execution of the threat].)

Thus, in this case the jury was free to interpret the words spoken from all of the surrounding circumstances of the case. Appellant and Arambula had known each other for several years. They knew each other because of their mutual membership or association in the criminal street gang Happy Town. Two days earlier Arambula had given damaging testimony against appellant's brother at his preliminary hearing where he was charged with murdering a police officer. Arambula also knew appellant's brother to be a Happy Town gang member. Appellant's words informed Arambula she had "fucked up" his brother's trial and he was going to talk to his fellow gang members. The fact Arambula became fearful for her life implied she knew Happy Town gang members were capable of violence and would not hesitate to retaliate against her for hurting a fellow gang member and to prevent her from giving further testimony at his trial. A rational juror could reasonably find a threat to bring a person to the attention of a criminal street gang as someone who has "ratted" on a fellow gang member presents a serious danger of death or great bodily injury.

Moreover, appellant apparently acted on his intention. (See, e.g., *People* v. *Martinez, supra,* 53 Cal.App.4th 1220 [defendant's activities after making vague threat of "I'll get you" supported finding defendant intended those words to be taken as a threat].) Less than 30 minutes later fellow gang members parked in front of Arambula's home and honked to get her attention. Gang members put the word out on the street they were looking for her.

For these same reasons the threat was sufficiently specific in the context of this case. (*In re David L., supra,* 234 Cal.App.3d at p. 1660 [section 422 does not require details such as the manner and time of execution of the threat].) It is true that in the abstract the words "I'm going to talk to some guys from Happy Town" could mean something as innocuous as, for example, Arambula would no longer be invited to Happy Town parties, or because Happy Town members do not keep secrets appellant would have to tell the other gang members what she had done. However, based on appellant's and Arambula's history and their mutual involvement in Happy Town, Arambula knew appellant's words meant "they were going to kill me," "they were going to come back and kill me" or "shoot me" for having given damaging testimony at a fellow gang member's trial. (See, e.g., *People* v. *Garrett, supra,* 30 Cal.App.4th 962 [defendant's threat to put a bullet in his wife's head conveyed gravity of purpose and immediate prospect of execution because of the defendant's past beatings, wife's knowledge he kept gun

in the house and wife's knowledge he had been convicted and imprisoned for voluntary manslaughter years before].)

Thus, although appellant's words were ambiguous, did not mention a particular criminal act or give other particulars, a rational juror could have found—based on all the surrounding circumstances—appellant's words were sufficiently unequivocal, unconditional, immediate and specific to convey to Arambula a gravity of purpose and immediate prospect of death or serious bodily injury.

Based on the evidence, a rational juror could also find appellant's threat placed Arambula in a state of sustained fear. It is true at trial she claimed she was not initially frightened for her life upon hearing appellant's words, and that she did not telephone police until after the car honking incident and after hearing Happy Town gang members were looking for her. However, there also was evidence she admitted to Officer Bergmann when he arrived in response to her call for help—confirmed by her preliminary hearing testimony—she was immediately placed in fear for her life and called police when she became convinced death or serious bodily injury was imminent. In this scenario, Arambula remained in a state of fear for hours until either Officer Bergmann arrived, or until "Tank" and "Jaspar" were detained two hours later near Arambula's home. Even if Arambula did not begin to seriously fear for her life until after she learned Happy Town members were looking for her, at least 15 minutes to a half hour elapsed between receiving that information and Officer Bergmann's arrival, and 2 additional hours before he and other officers stopped "Tank" and "Jaspar" near her home. Thus, in either scenario the period of time Arambula was in a state of sustained fear was more than momentary, fleeting or transitory and therefore sufficiently long to satisfy the statute. (See *People* v. *Allen* (1995) 33 Cal.App.4th 1149, 1156 [40 Cal.Rptr.2d 7] [the words "sustained fear" in section 422 mean a "period of time that extends beyond what is momentary, fleeting, or transitory" and 15 minutes of sustained fear in that case was sufficient].)

Accordingly, we conclude substantial evidence supports appellant's conviction for making a terrorist threat. (*People* v. *Barnes, supra,* 42 Cal.3d 284, 303-304.)

III. *Substantial Evidence Supports the Conviction for Dissuading a Witness by Force or Express or Implied Threat of Force or Violence.*

Appellant was convicted of dissuading a witness by force, or by an express or implied threat of force or violence, in violation of section 136.1, subdivision (c)(1).

This section provides in pertinent part:

"(a) Except as provided in subdivision (c), any person who does any of the following is guilty of a misdemeanor:

"(1) Knowingly and maliciously prevents or dissuades any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law.

"(2) Knowingly and maliciously attempts to prevent or dissuade any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law.

". . . . . . . . . . . . . . . . . . .

"(c) Every person doing any of the acts described in subdivision (a) or (b) knowingly and maliciously under any one or more of the following circumstances, is guilty of a felony punishable by imprisonment in the state prison for two, three, or four years under any of the following circumstances:

"(1) *Where the act is accompanied by force or by an express or implied threat of force or violence, upon a witness or victim or any third person or the property of any victim, witness, or any third person. . . .*" (Italics added.)

Appellant claims his statements to Arambula, she had "fucked up his brother's testimony," and that he was "going to talk to some guys from Happy Town," were insufficient to constitute a violation of this section. Specifically, he claims his statements were insufficient because the statements referred to Arambula's past testimony and not her upcoming testimony at his brother's trial. In addition, he claims his statements were not accompanied by force or by an express or implied threat of force or violence.

Based on our discussion in part I, *ante*, we reject appellant's latter contention. A rational juror could find his statement he was "going to talk to some guys from Happy Town," was an implied threat he would arrange for some members of this criminal street gang to inflict force or violence on Arambula. Indeed, Arambula, based on her familiarity with the "guys from Happy Town," understood his words to mean "they were going to kill her," or "come back and shoot her."

We also reject appellant's contention his words did not violate section 136.1 because his remarks referred only to Arambula's past testimony. The present case is not unlike the situation presented in *People v. Ford* (1983)

145 Cal.App.3d 985 [193 Cal.Rptr. 684]. In *Ford* shortly after a witness had finished testifying against the defendant and two others at a preliminary hearing, the defendant yelled to the witness, "'You punk mother fucker, we'll get you, you've got kids.'" (*Id.* at p. 987.) On appeal the defendant contended he could not be found guilty of preventing testimony which the witness had already given. He argued the threat was made in retaliation for the testimony the witness gave at the preliminary hearing, and was not an attempt to prevent the witness from giving further testimony in the future.

The appellate court rejected the defendant's argument his words were not an attempt to dissuade a witness by threat of force or violence. "The words 'You punk mother fucker, we'll get you, you've got kids,' have more than a plain meaning, as do all words. These words also carry with them an inherent baggage of connotation which plainly suggests to the auditor, 'You are in trouble for testifying so do not let it happen again or things will only get worse.' The jury could interpret defendant's remarks to [the witness] as a warning or threat not to testify in the future." (145 Cal.App.3d at p. 989; see also *People* v. *Thomas* (1978) 83 Cal.App.3d 511, 513, fn. 3 [148 Cal.Rptr. 52] [the defendant's argument the witness could not be dissuaded from doing what she had already done was based upon the false premise the witness was not a potential future witness].)

Similarly in the case at bar, the fact appellant's comments only referred to Arambula's past testimony does not immunize him from being found guilty of attempting to dissuade her from giving testimony in the future. Arambula had just testified at the preliminary hearing. She was expected to be a witness at appellant's brother's upcoming murder trial. A reasonable interpretation of appellant's words was "your testimony has already seriously damaged my brother in his murder prosecution. I'll get my fellow gang members to so injure or intimidate you, you won't repeat your performance at his trial."

"There is, of course, no talismanic requirement that a defendant must say 'Don't testify' or words tantamount thereto, in order to commit the charged offenses. As long as his words or actions support the inference that he . . . attempted by threat of force to induce a person to withhold testimony [citation], a defendant is properly" convicted of a violation of section 136.1, subdivision (c)(1). (*People* v. *Thomas, supra,* 83 Cal.App.3d 511, 514 [in hallway outside courtroom defendant cursed at and threatened witness and yelled, " ' "You put my mother in jail, you had my mother picked up." ' "].)

Thus, based on reasonable inferences from the evidence presented at trial, a rational juror could find appellant's words were not only an expression of

his dissatisfaction with Arambula's past testimony, but were also an attempt to prevent her from giving any further damaging testimony in the future. Accordingly, we conclude substantial evidence supports appellant's conviction for attempting to dissuade a witness by an express or implied threat of force or violence. (*People* v. *Barnes, supra,* 42 Cal.3d 284, 303-304.)

### IV. *The Two-year Concurrent Term Imposed on the Conviction for Making a Terrorist Threat Must Be Stayed Pursuant to Section 654.*

■ Appellant argues the two offenses were based on the same words and actions and were both incident to the same objective. Thus, he argues the two offenses cannot be separately punished under section 654.

Section 654 provides "[a]n act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; . . . ."

■ "The purpose of section 654 is to prevent multiple punishment for a single act or omission, even though that act or omission violates more than one statute and thus constitutes more than one crime. Although the distinct crimes may be charged in separate counts and may result in multiple verdicts of guilt, the trial court may impose sentence for only one offense . . . ." (*People* v. *Liu* (1996) 46 Cal.App.4th 1119, 1135 [54 Cal.Rptr.2d 578] [concurrent sentences for two convictions of conspiracy to murder were proper because each conspiracy involved a separate victim; however, separate punishment for offense of carrying a silencer could not stand where the objective of the crime was the successful completion of the conspiracies].)

On the other hand, multiple punishment is proper if the evidence discloses a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other. Our Supreme Court has defined the proper test as follows: "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal* v. *State of California* (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839] [separate punishment for arson could not stand because the objective of the offense was to commit the two attempted murders for which separate punishments were proper].)

■ The People argue multiple punishments were proper in this case because appellant entertained separate objectives in threatening Arambula.

The People claim he had a retaliatory objective because of her past damaging testimony and a separate objective to dissuade her from testifying against his brother at his future trial. The People thus claim the evidence demonstrates appellant's threats had two separate, independent objectives.

We are not persuaded. The parties agree appellant's two convictions arose from a single act. Indeed, in both opening and closing arguments the prosecutor informed the jury the two crimes arose from the same act. For example, in closing argument the prosecutor argued: "Those are the two charges. They both arise out of the same facts, out of the same conduct and words of Angel Mendoza to Elva on August 21st." The prosecutor argued appellant had two intentions, one to "scare" Arambula and one to "dissuade her from future testimony" but pointed out to the jury appellant's "over-all motive is to help his brother."

Thus, as the prosecutor noted, appellant's primary objective was to help his brother by preventing further damaging testimony from Arambula. His objective and intent for scaring her was to dissuade her from testifying in the future. The method he employed to reach his objective was his implied threat of death or great bodily injury. Thus, his terrorist threat can only be considered incidental to his primary objective of dissuading Arambula from testifying at his brother's upcoming trial.

Accordingly, the concurrent sentence imposed for making a terrorist threat (§ 422) must be stayed. (*People* v. *Dominguez* (1995) 38 Cal.App.4th 410, 420 [45 Cal.Rptr.2d 153] [the proper procedure for disposing of a term banned by section 654 is to impose and stay sentence].)

## DISPOSITION

The judgment is modified to stay the term imposed on count I for making a terrorist threat (§ 422) pursuant to section 654. In all other respects the judgment is affirmed.

Lillie, P. J., concurred.

**WOODS, J., Concurring.**—I join in the opinion of Justice Johnson.

I write separately to highlight the analysis required by Penal Code section 422 (statutory references are to the Penal Code).

California law has many threat statutes. (See §§ 69, 71, 76, 95, 136.1, 137, subd. (b), 139, 140, 422, 422.6, 646.9, 653m, 2947, 4503, 11412.) Their elements vary.

Section 422 is addressed to *any* person. (Some threat statutes target a narrow class, e.g., § 139 applies only to a "person who has been convicted of

any felony offense specified in Section 12021.1 . . . .") It prescribes two mental states ("willfully threatens" and "with the specific intent that the statement is to be taken as a threat") and eliminates one ("even if there is no intent of actually carrying it out"). It requires that "death or great bodily injury" be threatened (cf. §§ 69 ["*any* threat" (italics added)], 95, subd. (c) ["any threat"], 71 ["a threat . . . to inflict an unlawful injury upon any person or property"]). It does *not* require the threat be *directly* conveyed to the threatened person[1] (cf. §§ 71 ["a threat, *directly* communicated to such person" (italics added)], 11412 ["a threat, *directly* communicated to such person" (italics added)]). But, whether directly or indirectly, the threat must be *conveyed* to the threatened person. And, having been conveyed, the threat must cause particular effects: the threatened person must be "in fear"; that fear must be "sustained"; the fear must be reasonable; and it must be for "his or her own safety or for his or her immediate family's safety."[2] (Cf. § 422.6 where actual fear by the victim is not required [*In re M.S.* (1995) 10 Cal.4th 698, 715 [42 Cal.Rptr.2d 355, 896 P.2d 1365]].)

And the threat, "on its face" and "under the circumstances" must be "unequivocal," "unconditional," "immediate," and "specific."

But section 422 does *not* require the threat be literal or even verbal. Sending a government informant a dead, tongueless rat may well violate section 422.

If the communication, by whatever means, was intended to convey and did convey an unequivocal, unconditional, immediate, and specific threat of great bodily injury or death, the statute has been violated.

Here, substantial evidence supports the jury's finding appellant made such a threat.

It bears repeating that just as we may not add elements to section 422, we may not subtract elements from section 422. Inclusion of "unequivocal, unconditional, immediate, and specific" in section 422 are not like race car decals, functionless and just for show.

---

[1] *In re David L.* (1991) 234 Cal.App.3d 1655 [286 Cal.Rptr. 398] so holds.

[2] Reasonable, sustained fear for the life of one's dog, best friend, or too distant kin does not satisfy the statute.