Filed 11/26/13  P. v. Lopez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | E056440 |
| v. | (Super.Ct.No. RIF1100103) |
| SERGIO LOPEZ, | OPINION |
|     Defendant and Appellant. | |


APPEAL from the Superior Court of Riverside County.  Gary B. Tranbarger, Judge.  Affirmed.

Dennis L. Cava, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood, and Ifeolu E. Hassan, Deputy Attorneys General, for Plaintiff and Respondent.

# I

# INTRODUCTION[1]

Defendant Sergio Lopez harassed and threatened his former girlfriend and her teenage son. In two separate trials in 2011 and 2012, juries convicted defendant of seven criminal offenses: two counts of making a criminal threat (counts 2 and 5, § 422); two counts of felony stalking (counts 3 and 4, § 646.9, subds. (a) & (b)); one count of vandalism (count 7, § 594, subd. (b)(2)(A)); and two counts of violating a protective order (counts 8 and 9, § 273.6, subd. (a).)[2] Defendant admitted having a serious felony and a prior strike conviction. (§ 667, subds. (a), (c), & (e).) The court sentenced defendant to a total prison term of 10 years four months.

We reject defendant's argument on appeal that insufficient evidence supports his convictions from the second trial for criminal threats (counts 2 and 5) and stalking (count 4).[3] We affirm the judgment.

# II

# STATEMENT OF FACTS

*The Smashed Windshield*

Jane Doe had dated defendant for a year and a half in 2009 and 2010. After they broke up, he pursued her, trying to reconcile.

---

[1] All statutory references are to the Penal Code.

[2] The jury acquitted defendant of one count of vandalism (count 1) and one count of dissuading a witness (count 6, § 136.1, subd. (b)(1).)

[3] In the first trial, the court declared a mistrial on counts 2, 4, and 5.

On December 2, 2010, Jane Doe was at her home with her son, John Doe, and her boyfriend, Jose Castro. When the phone rang, John answered it and handed it to Castro who spoke to the caller. Castro and John went outside and encountered defendant. Defendant was banging on the front door and screaming. Castro's car windshield was smashed and the side of Jane Doe's car had been scratched from the front fender to the back.

*The "Mexican Mafia" Threat*

At 9:00 p.m. on March 30, 2011, defendant came to Jane Doe's home. She agreed to talk to him outside the house if her son was present. She called her son, who was down the street at a friend's house. Defendant was angry and behaving violently, chasing Jane Doe and grabbing at her arm. When John Doe arrived, he told defendant to leave Jane Doe alone.

Defendant said he was going to call the Mexican Mafia "to blast this bitch's house." John and Jane Doe were both afraid. Jane Doe began crying. John Doe pushed defendant and defendant punched John Doe on the back of his head with a closed fist. When John Doe pushed defendant again and defendant fell to the ground, John and Jane Doe ran into the house. Jane Doe called the 911 operator and said defendant was drunk and attacking John Doe. John Doe reported defendant's threat to call the Mexican Mafia.

Defendant continued ringing the door bell and banging on the locked door. The police arrested him that night.

*The "Jail Call" Threat (Count 2)*

The next day, around 5:00 a.m. on March 31, 2011, defendant called the Doe

3

house from jail. John Doe answered the phone and refused to wake up his mother. Defendant made threats about Jane Doe. Defendant said, "She fucked up. She should be lucky I'm not going over there and doing some stupid shit to her." Defendant called back, saying, ". . . when I get out, fool, I'm fuckin' doin' some bad shit." Defendant continued, ". . . remember what I told your mama before on the phone? [¶] . . . [¶] This time I mean it, . . . What she did was not cool. I was giving her something—I'm not playing with your mom no more, dude, I tried to be nice with her . . . you guys are gonna see me when I get out and talk to you guys." John Doe took defendant's words to be a threat and he was afraid defendant might harm his mother.

On April 1, 2011, defendant talked to Jane Doe on the phone. He told her, "That was fucked up what you did, girl. [¶] . . . [¶] . . . You wanted, you wanted to chose [*sic*] this shit this way, you wanted to play this way with me, okay? Okay? This is fucked up. Now it's your turn, girl. You fucked up towards me." When Jane Doe refused to let defendant talk with John Doe, he replied, "You're making this worse on you." When she asked how she was making it worse, defendant replied, "Okay, you'll see." Jane Doe took his words as a threat and was afraid he would hurt her. At the end of the call, when Jane Doe refused to bail defendant out, defendant warned, "Okay, then it's on then, bitch."

*Stalking and The "Dirty Work" Threat (Counts 4 and 5)*

On April 15, 2011, a restraining order was issued and served on defendant, ordering him to have no contact with Jane Doe and John Doe. In spite of the order, defendant called Jane Doe at 5:00 p.m. and 10:00 p.m. At 2:00 a.m. on April 16, 2011,

4

defendant called Jane Doe while standing outside her home. He banged on the door and yelled for Jane Doe to answer. Jane was so scared she ran into her closet and tried to pretend she was not home. She called the police and Castro.

A couple of hours later, defendant called back, repeatedly calling Jane a "bitch" and saying, "If you want it this way, you're going to get it like this." Somewhat inconsistently, he continued, "I'm going to take matters into my own hands. I'm not going to let anybody else do the work. I'm going to let someone else do my dirty work."[4] After Jane called the police and they arrived, defendant called again.

On August 6, 2011, defendant called Jane Doe again from jail telling her he had good intentions and he would not behave stupidly or crazy but she knew he had a drinking problem.

### III

### DISCUSSION

Under the substantial evidence standard, "'"an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find [the elements of the crime] beyond a reasonable doubt."'" [Citations.] "'"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding

---

[4] In the first trial, Jane Doe had testified that defendant had said, "I'm going to have to take matters into my own hands, and I'm not going to do my own dirty work . . . [¶] . . . I'm going to let somebody do it for me." The apparent confusion in defendant's statements may be due to him misspeaking or Jane misquoting him.

5

does not warrant a reversal of the judgment.'"" [Citation.]" (*In re George T.* (2004) 33 Cal.4th 620, 630-631.)

Defendant's argument regarding the insufficiency of the evidence focuses on the lack of plausibility and credibility to his threats. With respect to counts 2 and 5, the criminal threats made on March 31, 2011, and April 16, 2011, defendant contends his statements did not convey a gravity of purpose and an immediate prospect of great bodily injury because they were ambiguous, uncertain, and contradictory. (§ 422; *People v. Toledo* (2001) 26 Cal.4th 221, 227-228; *People v. Wilson* (2010) 186 Cal.App.4th 789, 807.) With respect to the felony stalking conviction (count 4), defendant repeats the argument that he made no credible threat because his statements were ambiguous and contradictory. (§ 646.9, subds. (a) & (g).) (*People v. Uecker* (2009) 172 Cal.App.4th 583, 594.)

We disagree. With respect to both the "jail call" threat and the "dirty work" threat (counts 2 and 5), defendant's threats were sufficiently unequivocal, unconditional, immediate, and specific in light of the surrounding circumstances. Furthermore, the victim's fear was reasonable under the circumstances. With respect to stalking (count 4), defendant made credible verbal threats to Jane Doe and engaged in a threatening pattern of conduct reasonably causing her to fear for her safety. Based on the foregoing, we find substantial evidence supports all defendant's convictions.

## A. Criminal Threats

A conviction under section 422 requires proof of five elements: (1) that the defendant willfully threatened to commit a crime resulting in death or great bodily injury

6

to another person; (2) that the defendant made the threat with the specific intent that the statement be taken as a threat, even if there was no actual intent to carry it out; (3) that the threat—which may be verbal, written, or electronic—was on its face and under the circumstances so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat; (4) that the threat actually caused the person threatened to be in sustained fear for his or her own safety or for his or her immediate family's safety; and (5) that the threatened person's fear was reasonable under the circumstances. (*People v. Toledo, supra*, 26 Cal.4th at pp. 227-228; § 422, subd. (a).)

In *People v. Mendoza* (1997) 59 Cal.App.4th 1333, the victim testified as a prosecution witness at the preliminary hearing of the defendant's brother, a Happy Town criminal gang member. (*Mendoza,* at p. 1337.) The defendant went to the victim's home and told her that her testimony had damaged his brother and that the defendant "was going to talk to some guys from Happy Town." (*Ibid.*) Another Happy Town gang member, Tank, parked outside of the victim's home and honked his horn. (*Id.* at pp. 1337-1338.) The victim later learned from her sister that Tank was looking for her. (*Id.* at p. 1338.) The defendant was convicted of a section 422 violation. The appellate court rejected defendant's claims about a lack of specificity, finding that, although defendant's words were ambiguous and lacked particulars, "the jury was free to interpret the words spoken from all of the surrounding circumstances of the case." (*Id.* at p. 1341.) Therefore, "[a] rational juror could reasonably find a threat to bring a person to the attention of a criminal street gang as someone who has 'ratted' on a fellow gang member

7

presents a serious danger of death or great bodily injury." (*Ibid*.) The *Mendoza* defendant's language was unequivocal, unconditional, immediate, and specific, conveying to the victim a gravity of purpose and immediate prospect of death or serious bodily injury. (*Id*. at p. 1342.) Even an ambiguous statement may be a basis for a violation of section 422. (*People v. Butler* (2000) 85 Cal.App.4th 745, 753-754.)

Here, defendant called the Doe household at dawn on March 31, 2011, and told John Doe he was going to do some "bad shit" to his mother, suggesting he intended to hurt her. Defendant elaborated on his intentions throughout their phone conversation. In December 2010, defendant had vandalized two cars and terrorized Jane Doe's household. The night before the "jail call" threat, defendant had physically assaulted John Doe, tried to grab Jane Doe, and warned that he was going to call the Mexican Mafia. After what had happened the night before and in December 2010, it was certainly reasonable for Jane Doe to take defendant seriously and to be afraid. In light of these circumstances, a jury could rationally find that defendant's threat to do some "bad shit" was so unequivocal, unconditional, immediate, and specific as to convey a gravity of purpose and an immediate prospect of great bodily injury. Substantial evidence supports the conviction.

Similar reasoning applies to count 5. After a restraining order was issued on April 15, 2011, defendant began harassing Jane Doe at 2:00 a.m. on April 16, 2011, banging on her door and yelling. Later he called her on the phone, cursed her repeatedly, and finally made his muddled threat—according to Jane Doe's testimony—about taking matters in his own hands and either doing his own dirty work or letting someone else do the dirty

work.  The circumstances of this particular threat, combined with the entire history of defendant's deplorable conduct toward Jane Doe, allowed a rational jury to find defendant's threats were so unequivocal, unconditional, immediate, and specific as to convey a gravity of purpose and an immediate prospect of great bodily injury to Jane Doe.  Based on the foregoing, it was reasonable for Jane Doe to be afraid.  Even if defendant's threats seemed somewhat inconsistent or ambiguous, a threat is not insufficient simply because it is imprecise.  Section 422 does not require such details to be expressed.  (*People v. Wilson, supra*, 186 Cal.App.4th at p. 806.)  In light of the surrounding circumstances, defendant's statements provided substantial evidence to support the conviction on count 5.

*B.  Stalking*

"Any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking."  (§ 646.9, subd. (a).)  A credible threat means "a verbal or written threat . . . or a threat implied by a pattern of conduct or a combination of verbal, written, or electronically communicated statements and conduct, made with the intent to place the person that is the target of the threat in reasonable fear for his or her safety or the safety of his or her family, and made with the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her family."  (§ 646.9, subd. (g).)

9

Defendant made verbal threats and also engaged in a pattern of conduct that amounted to an implied threat, with the apparent ability to carry out the threat such that Jane Doe reasonably feared for her safety. In spite of the restraining order forbidding defendant from contacting Jane Doe, defendant called and threatened her many times, including while he was standing outside her home at 2:00 a.m. Defendant's threats communicated an intent to carry out some form of evil, injury, or damage. (*People v. Borrelli* (2000) 77 Cal.App.4th 703, 715.) Defendant's threats were credible and Jane Doe's fear was reasonable because defendant expressed an intent to harm her and demonstrated his apparent ability to carry out that threat. Substantial evidence supports defendant's felony stalking conviction.

IV

DISPOSITION

We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

RICHLI
J.

10