Filed 11/4/24  P. v. Ball CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B322908 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA102473) |
| v. | |
| RAYMOND EDWARD BALL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lauren Weis Birnstein.  Affirmed.

Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————

Raymond Edward Ball appeals from a judgment entered after a jury found him guilty of one count of attempted criminal threats (count 2) and one count of criminal threats (count 3), made against the same victim on two separate occasions.[1] The trial court suspended imposition of sentence and placed Ball on formal probation for two years.

Ball contends there was insufficient evidence presented at trial to support the conviction on the criminal threats offense charged in count 3. He also contends the trial court erred in allowing the prosecution to refile count 3 after the magistrate declined to hold him to answer for that charge at the preliminary hearing. For the reasons explained below, we reject Ball's contentions and affirm the judgment.

## BACKGROUND

### A.     The Charges

After the close of evidence at the preliminary hearing, the magistrate held Ball to answer on charges of assault with a firearm (Pen. Code,[2] § 245, subd. (a)(2); count 1) and criminal threats (§ 422, subd. (a); count 2), both alleged to have occurred on February 8, 2020, and a charge of stalking (§ 646.9, subd. (a); count 4), alleged to have occurred between February 8 and 22, 2020. The magistrate declined to hold Ball to answer on a second charge of criminal threats, alleged to have occurred on February 22, 2020 (count 3). The district attorney filed an information asserting the three charges (counts 1, 2 & 4), consistent with the magistrate's ruling.

---

[1] The jury found Ball not guilty of the crime charged in count 1, assault with a firearm against the same victim.

[2] Undesignated statutory references are to the Penal Code.

2

Ball filed a motion under section 995 to set aside the information as to the stalking count. After hearing from the parties, the trial court granted the motion and dismissed the stalking count. The court allowed the district attorney to amend the information to refile count 3, the February 22, 2020 criminal threats offense. Accordingly, the case proceeded to trial on an amended information charging Ball with assault with a firearm (count 1) and two counts of criminal threats (counts 2 & 3).

In addressing Ball's contention of error regarding the refiling of count 3 (*infra*, Discussion section B) we will set forth a summary of the pertinent evidence presented at the preliminary hearing and a more detailed account of the relevant proceedings below.

**B.     Summary of Pertinent Evidence Presented at Trial**

The victim of the offenses charged in this case, Kenneth Solana, and his fiancé, Mychelle Reyna, worked at a Trader Joe's store in Los Angeles County (hereafter, the store). Appellant Ball and his wife, Maria Rodriguez-Ball, lived near and shopped at the store. Ball was a private investigator who carried a firearm when he was working. The charged offenses arise from two encounters between Ball and Solana that occurred at the store (the first outside, and the second inside).

At trial, Solana and Reyna testified in the prosecution's case and Ball and Rodriguez-Ball testified in the defense case (and each side called other witnesses).

1.     *February 8, 2020 incident*

Ball does not challenge his conviction for attempted criminal threats (count 2) arising from the February 8, 2020 encounter between him and Solana. We describe the February 8, 2020 incident here because the history between Ball and Solana

3

informs an evaluation of whether Ball committed a criminal threats offense against Solana on February 22, 2020. (See *People v. Mosley* (2007) 155 Cal.App.4th 313, 324 (*Mosley*) [the history between the defendant and the victim is a relevant circumstance to examine in determining whether the defendant's statement constitutes a criminal threat].)

      a.     *Evidence presented by the prosecution regarding the February 8, 2020 incident*

In the evening on February 8, 2020, Solana was working at the store. Reyna, who was not working at that time, drove to the store to meet Solana during his meal break. She arrived at their meeting spot, near the store's loading dock, at around 7:00 p.m. Another car was parked in the same area. She drove her car in reverse toward the other car and parked in front of it. A man—whom she identified at trial as Ball—honked his horn, exited the car, and paced back and forth as he screamed profanities at her. He returned to his car, revved the engine, drove around her car, reversed toward her, and parked in front of her car. She recognized Ball as a regular customer of the store.

Solana exited the store and entered Reyna's car. She told him about her encounter with Ball—whom she referred to as a regular customer—and said she wanted to leave because the customer was "acting crazy." Solana, who was wearing his store uniform, exited Reyna's car and walked over to Ball's car. He wanted to know which customer it was. He looked through a window of Ball's car, which was rolled partway down, and recognized Ball as a frequent customer at the store. He asked Ball, "Is everything okay" and/or "Hey, bro, is there a problem?" Ball responded, "You and your bitch need to get the fuck out of here. You're gonna get smoked." He reiterated the statement

4

about Solana and Reyna getting "smoked" multiple times. Solana replied, "I know who you are," trying to convey that he recognized Ball as a customer. He again asked Ball if everything was okay and said, "What's up?" According to Solana, Ball "blew up" at him. Solana observed something shiny on Ball's lap and believed Ball was holding a gun.

Solana was confused by Ball's reaction, and he started to walk back to Reyna's car. He was scared because he believed Ball "wasn't playing around" and was going to hurt or kill him and Reyna. Ball exited his car and walked toward the back of it. He repeated that Solana and Reyna need to leave before they "get smoked." Reyna heard Ball make a statement to this effect and believed it meant Ball was going to shoot them. Solana testified that when he was not yet to Reyna's car, he looked at Ball and observed that Ball was holding a shiny black handgun in his right hand, close to his body, with the barrel pointing at Solana. Solana entered Reyna's car, told her that Ball had pulled a gun on him, and indicated they should leave. Solana was shocked and scared. Reyna had not observed a gun.

Reyna drove to the front of the store. She and Solana approached two of the store's managers in the parking lot. They told the managers what happened, and the managers contacted law enforcement. Solana waited inside the store. When an officer arrived, Solana reported the incident.

b. *Evidence presented by the defense regarding the February 8, 2020 incident*

During his trial testimony, Ball denied that he spoke to or yelled at Reyna on February 8, 2020. He stated that he honked his horn and moved his car after she pulled in front of him and

5

backed up very close to his car. He said he did not exit his car or speak to her.

Ball further testified that he was talking to a friend on his phone when Solana crouched next to his car and thumped on his closed passenger window.[3] Solana was wearing a sweatshirt with the hood pulled over his head. Using profanity, Solana asked why Ball was being disrespectful to his fiancé. Ball responded that he did not know what Solana was talking about. Solana continued to accuse Ball of being disrespectful and continued to use profanity. Ball recognized Solana as a store employee, and he exited his car to "investigate." He tried to calm Solana down, and when he was unsuccessful, he entered his car and drove away.

Ball denied that he had his gun with him at the store on February 8, 2020. He stated that he was licensed to openly carry a firearm while he was working as a private investigator, and he was not permitted to carry it when he was not working. Ball's wife, Rodriguez-Ball, testified at trial that she recalled Ball left his firearm on a bedroom dresser when he went to the store on February 8, 2020.

    2.    *February 22, 2020 incident*

Count 3, the criminal threats offense at issue in this appeal, arises from a February 22, 2020 encounter between Ball and Solana that took place inside the store at around 5:00 p.m., while Solana was working.

---

[3] The friend testified at trial. He stated that while he was on the phone with Ball on February 8, 2020, he heard someone knock on the car window and he heard Ball say, "Hey, what's going on?" He did not hear Ball raise his voice or say he was going to "smoke" anyone.

6

The store was crowded with customers. Solana was passing out cheese samples when Rodriguez-Ball (Ball's wife) approached and asked him about the cheese. After Solana answered her questions, she stepped to the side, and Solana noticed Ball, who had been standing behind her. Although Ball appeared calm (at first), Solana was nervous because of their previous encounter.

According to Solana, Ball explained why he reacted the way he did during the February 8, 2020 incident. He told Solana that he was from the "streets" of Los Angeles; he was "from a gang"; and "anybody that goes up to his car, they're going to see smoke." Solana replied, "You know who I was [meaning a store employee], and you still did what you did." Solana did not want to say more because he was working, and he did not want to make Ball angry. So, he "brushed him off," and Ball started raising his voice.

Store managers, who witnessed the interaction, told Solana to go to the back of the store. Solana testified that Ball told him, "Yeah, you better go to the back. You better go to the back. I'm gonna wait for you. I know -- I know what time you get off." Ball also said, "I'm gonna come back when you get off." Solana was scared and believed Ball was going to hurt him.

As Solana walked to the back of the store, Ball's voice became louder. He shouted to Solana that he was "going to come back and catch [him] after work." He also repeated multiple times that he was "gonna catch [Solana] slipping." Solana understood this to mean that Ball was going to hurt him. Solana was more afraid than he was after the February 8, 2020 encounter because this was the second time Ball had confronted

7

him at his workplace, and he believed Ball was serious about hurting him.

Juliana Gonzalez, a store manager who witnessed the February 22, 2020 encounter between Ball and Solana, testified at trial. She was working near Solana when she heard people arguing. She turned around and observed that it was Solana and a regular customer (whom she identified at trial as Ball). It appeared to her that Solana "was in a little bit of distress," so she told him to go to the back of the store. She heard Ball say to Solana, "You're gonna get caught slipping." Solana "look[ed] like he was in shock."

Gonzalez saw Ball exit the store, and she asked some employees to contact law enforcement. She followed Ball because she wanted to be able to tell officers which way he went. She observed him "pacing back and forth in front of the store," appearing "antsy" and "heated." He looked at her and said, "Tell him [meaning Solana] to come back out here" and "I'm gonna smoke him."

Solana testified that he spoke to officers the same evening, after the incident. The following day, he transferred to a different Trader Joe's store. He felt like he could not work "knowing that [Ball] was gonna come back." He was afraid that Ball would hurt him and/or Reyna (who also transferred to a different store). Solana remained in fear of Ball at the time of trial.

Ball was arrested outside his home on March 18, 2020. At the time, he was wearing a badge around his neck and had a loaded 9-millimeter semiautomatic firearm in a holster on his left hip.

b.     *Evidence presented by the defense regarding
the February 22, 2020 incident*

Ball testified at trial that while he and his wife were
shopping at the store on February 22, 2020, his wife spoke with
Solana, who was handing out samples.  Ball approached Solana
and asked, "Are you the guy who knocked on my window?"
Solana replied loudly, "Yes, but you didn't have to pull a gun on
me."  Ball felt embarrassed.  Solana walked away with another
employee.  Ball finished shopping with his wife, paid for their
groceries at the register, and left.  He denied that anyone asked
him to leave the store.[4]

## C.     Verdicts and Sentencing

The jury found Ball not guilty of assault with a firearm
(count 1) and the lesser related offense of brandishing a firearm.[5]
The jury also found him not guilty of the February 8, 2020
criminal threats offense charged in count 2, but found him guilty
of the lesser included offense of attempted criminal threats in
count 2.  Finally, the jury found him guilty of the February 22,
2020 criminal threats offense (count 3).

At the sentencing hearing, the trial court suspended
imposition of sentence and placed Ball on formal probation for
two years with terms and conditions, including that he serve 40

---

[4] Rodriguez-Ball's testimony regarding the February 22,
2020 incident was consistent with Ball's testimony.  She
presented bank records showing a purchase made at Trader Joe's
on February 22, 2020.

[5] Because Ball was acquitted of these firearm offenses, we
do not consider Solana's testimony regarding Ball's possession of
a gun in our analysis of the sufficiency of the evidence supporting
the criminal threats conviction.

days in jail (which he had already served), perform 50 days of community labor, and complete a 52-week anger management class.[6] The court also issued a three-year criminal protective order, requiring Ball to stay at least 100 yards away from Solana, Reyna, Gonzalez, and all Trader Joe's stores in Los Angeles County.

## DISCUSSION

### A. Sufficient Evidence Presented at Trial Supports the Conviction for Criminal Threats (Count 3)

Under section 422, subdivision (a), "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."

Ball contends the prosecution presented insufficient evidence at trial to support a conviction on count 3, arguing (1) the statement he made on February 22, 2020 was too ambiguous to express a criminal threat, and (2) the statement did not convey

---

[6] In explaining the decision to order Ball to complete a 52-week anger management class, the trial court stated that Ball's attitude during his trial testimony indicated he was "a hothead" and had "anger issues."

to Solana a gravity of purpose and an immediate prospect of execution of a threat to commit a crime that would result in death or great bodily injury.

1. *Standard of review*

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The federal standard of review is to the same effect: Under principles of federal due process, review for sufficiency of evidence entails not the determination whether the reviewing court itself believes the evidence at trial establishes guilt beyond a reasonable doubt, but, instead, whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.] The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence. [Citation.] . . . ' " ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' " ' " (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

In determining whether substantial evidence supports the conviction, "we do not reweigh the evidence, resolve conflicts in the evidence, draw inferences contrary to the verdict, or reevaluate the credibility of witnesses." (*People v. Little* (2004) 115 Cal.App.4th 766, 771, citing *People v. Jones* (1990) 51 Cal.3d

11

294, 314.)  "[I]t is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends." (*Jones*, at p. 314.)  Moreover, "testimony of a single witness is sufficient to support a conviction" unless the testimony "is physically impossible or inherently improbable." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

       2.    *Pertinent legal principles regarding criminal threats*

"A threat is sufficiently specific where it threatens death or great bodily injury." (*People v. Butler* (2000) 85 Cal.App.4th 745, 752 (*Butler*).)  "[T]here is no requirement that a specific crime or Penal Code violation be threatened." (*Id.* at p. 755.)  "A threat is not insufficient simply because it does 'not communicate a time or precise manner of execution, section 422 does not require those details to be expressed.' " (*Id.* at p. 752.)  Nor does section 422 "require an immediate ability to carry out the threat." (*People v. Smith* (2009) 178 Cal.App.4th 475, 480.)

In determining whether a defendant made a criminal threat, we do not evaluate the defendant's statements in a vacuum.  Rather, the statements "are judged in their context." (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1137 (*Ricky T.*).)  "The surrounding circumstances must be examined to determine if the threat is real and genuine, a true threat." (*Ibid.*)  Similarly, the determination of "whether the words were sufficiently unequivocal, unconditional, immediate and specific [that] they conveyed to the victim an immediacy of purpose and immediate prospect of execution of the threat can be based on all the surrounding circumstances and not just on the words alone." (*People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1340 (*Mendoza*).)  A history between the defendant and the victim may " ' "be

considered as one of the relevant circumstances.' ' " (*Mosley*, *supra*, 155 Cal.App.4th at p. 324.) Moreover, "circumstances occurring *after*" the defendant made the statements may "further a finding of a [criminal] threat." (*Ricky T.*, at p. 1139.) "[I]t is the circumstances under which the threat is made that give meaning to the actual words used. Even an ambiguous statement may be a basis for a violation of section 422," when considered in light of the surrounding circumstances. (*Butler*, *supra*, 85 Cal.App.4th at p. 753.)

For example, in *Mendoza*, *supra*, 59 Cal.App.4th 1333, the Court of Appeal concluded substantial evidence supported the defendant's conviction for criminal threats where the defendant told a former associate of his gang who had testified against his brother at a preliminary hearing on a murder charge, "you fucked up my brother's testimony. I'm going to talk to some guys from Happy Town [the criminal street gang]." (*Id.* at pp. 1337, 1340-1342.) About a half hour after the defendant came to her home, made the statements and left, the victim heard the honk of a car horn and observed the defendant's friend and fellow gang member sitting in a car parked across the street. (*Id.* at pp. 1338, 1341.) The appellate court acknowledged that the defendant's "words themselves" were ambiguous and "did not articulate a threat to commit a specific crime resulting in death or great bodily injury." (*Id.* at pp. 1340, 1342.) Considering all the surrounding circumstances, including the history between the defendant and the victim, however, the Court of Appeal concluded that a "rational juror could reasonably find a threat to bring a person to the attention of a criminal street gang as someone who has 'ratted' on a fellow gang member presents a serious danger of death or great bodily injury." (*Id.* at p. 1341.)

13

The appellate court also pointed out that the defendant had "apparently acted on his intention" to talk to "some guys from Happy Town," as a gang member was looking for the victim within 30 minutes of the defendant making the threat. (*Ibid*.)

3. *Analysis*

Ball argues the statement "I'm gonna catch you slipping" was too ambiguous to express a criminal threat and did not convey to Solana a gravity of purpose and an immediate prospect of execution of a threat to commit a crime that would result in death or great bodily injury.[7] Considering the other words Ball uttered on February 22, 2020 and the circumstances surrounding the statement, we disagree with Ball's arguments.

Evidence presented at trial shows that two weeks before Ball made the statement at issue, he threatened to "smoke" Solana (and Reyna). Solana and Reyna understood this to mean Ball would shoot or kill them. Ball has offered no alternative meaning of "smoke," as used here, and we are aware of none.

On February 22, 2020, prior to saying "I'm gonna catch you slipping," Ball became angry and started raising his voice. He told Solana, "I'm gonna wait for you"; "I know what time you get off [work]"; "I'm gonna come back when you get off"; and "I'm going to come back and catch you after work." When Ball thereafter said, "I'm gonna catch you slipping," Solana understood that to mean that Ball was going to hurt him. According to store manager Gonzalez, immediately after the incident in the store, she observed Ball pacing back and forth outside in front of the store in a "heated" manner. Ball said to

---

[7] Ball does not challenge the sufficiency of the evidence supporting the other elements of the crime of criminal threats.

her, "Tell him [Solana] to come back out here" and "I'm gonna smoke him."

Viewing the evidence in a light most favorable to the judgment of conviction, as we must, substantial evidence demonstrates that Ball intended to convey to Solana that he would wait for him after work, and when he found him in a more vulnerable position than in a crowded grocery store, he would kill him or inflict great bodily harm. The fact that Ball remained outside the store, and told Gonzalez to go get Solana so he could smoke him, demonstrates "a gravity of purpose and an immediate prospect of execution of the threat" he had made to Solana. (See § 422, subd. (a).) Sufficient evidence supports the conviction.

Ball likens this case to *Ricky T.*, *supra*, 87 Cal.App.4th 1132, but that case is readily distinguishable. There, the juvenile court found that a 16-year-old student committed criminal threats when he told his teacher, "I'm going to get you" and "I'm going to kick your ass," after the student pounded on a locked classroom door and the teacher opened the door, hitting the student with it. (*Id*. at pp. 1135-1136.) The Court of Appeal concluded there were no surrounding "circumstances to corroborate a true threat," given there was no "prior history of disagreements" between the student and teacher, and there was no "evidence that a physical confrontation was actually imminent." (*Id*. at p. 1138.) Here, in contrast, Ball had previously threatened to "smoke" Solana and his fiancé; and he waited outside the store after the February 22, 2020 confrontation, indicating to the store manager that he wanted Solana to come outside so he could "smoke" him.

15

**B.** **The Trial Court Did Not Err in Allowing the Prosecution to Refile the Criminal Threats Charge in Count 3**

Ball contends the trial court erred when it allowed the district attorney to refile count 3 in an amended information, arguing (1) the magistrate made factual findings that were "fatal" to the criminal threats offense charged in count 3, and (2) even if the magistrate did not make such factual findings, the prosecution presented insufficient evidence at the preliminary hearing to support the charge.

1.     *Proceedings below*

As set forth above, the charges the magistrate considered at the preliminary hearing were assault with a firearm (count 1), the February 8, 2020 criminal threats offense (count 2), the February 22, 2020 criminal threats offense (count 3), and stalking (count 4).

Solana testified at the preliminary hearing. Regarding count 3—the charge at issue here—Solana stated that Ball approached him in the store on February 22, 2020 and explained that he was "from the streets," and "from a gang," and he would "smoke" anyone he did not know who came up to him (referring to the manner in which Solana had approached him on February 8, 2020). As Solana walked to the back of the store after their brief exchange, Ball said, "Yeah, you need to go to the back before I kick your ass." Ball also said, "I'm going to come back and catch you slipping." Solana interpreted the latter statement as a threat that Ball would come back to the store and beat him up or shoot him or harm him in some way.

The magistrate questioned Solana as follows: "And I know [the prosecutor] asked you this. You took it as a threat. Did you

take it as a threat that it was going to happen to you right then, or did you take it as something that would or might happen in the future?" Solana responded, "In the future. I didn't think he was going to do it there with a hundred people watching him."

After the close of evidence at the preliminary hearing, Ball's counsel argued there was insufficient evidence to hold Ball to answer on the charge of assault with a firearm. As defense counsel then began to discuss the alleged criminal threats, the magistrate stated, "You might have a more sympathetic ear from me as to . . . the 422 on count 3" (the February 22, 2020 criminal threats offense). The prosecutor responded, "The People submit." The magistrate stated, "I'm not going to hold to answer on count 3." During a subsequent discussion regarding whether the magistrate should hold Ball to answer on the stalking count, the magistrate stated: "And, for the record, it [the crime of stalking] doesn't have the immediacy element that 422 [the crime of criminal threats] has. And the Court doesn't intend to hold to answer on the 422, but the stalking charge doesn't have the same element of immediacy of the threat." The magistrate held Ball to answer on charges of assault with a firearm, the February 8, 2020 criminal threats offense, and stalking; and the district attorney filed an information asserting these charges.

At a pretrial hearing on May 11, 2022, the trial court noted Solana stated Ball made statements to him on both February 8 and 22, 2020. Addressing defense counsel, the court stated: "[Y]ou should understand that, if both of these dates come out, you know, the People can ask to file according to proof and, you know, I'll just give a unanimity instruction that they're going to have to agree on whichever date or both. So that is something we should consider now." Turning to the prosecutor, the court

17

stated: "If you want to file an amended information and allege both of the dates, you need to do that. If not, it'll be according to proof at trial if you make that motion." The prosecutor stated she would review the preliminary hearing transcript and file an amended information if the testimony was consistent with the statements given to the police officers. The court responded, "All right. So defense is on notice of that. It can be filed on the next appearance." Defense counsel did not comment on the potential refiling of count 3.

At the following pretrial hearing on May 17, 2022, the trial court heard argument on Ball's motion under section 995 to set aside the information as to the stalking count. During that discussion, the court noted the magistrate did not hold Ball to answer on count 3, the February 22, 2020 criminal threats offense. The court commented, "I don't know the thinking of the magistrate, really." The prosecutor posited that the magistrate believed the February 22, 2020 "threat lacked the immediacy element." The court responded, "Well, the case law says it probably was immediate enough." After further discussion, the court stated its inclination was to grant the 995 motion as to the stalking charge and allow the prosecution to refile count 3 in an amended information. Defense counsel requested time to review "the case law regarding the immediacy of the threat" and "the language of the [February 22, 2020] threat on its face." The court took a recess.

After the recess, defense counsel stated, "Based off of the nature of the threat, if it is the court's opinion that that threat is imminent enough and rises to the level of meeting the elements of a 422 for the purposes of prelim, I would ask that the court consider reducing that pursuant to 17(b) from a felony to a

18

misdemeanor . . . ." Defense counsel did not present any additional argument regarding the immediacy of the threat. The trial court explained that it could not reduce the charge at that juncture. Defense counsel responded, "Perfect. I will submit." The court granted the 995 motion as to the stalking count and ruled that the prosecution could refile count 3, concluding the charge "fits all of the elements for purposes of the preliminary hearing."

The following day, on May 18, 2022, the district attorney filed an amended information charging Ball with assault with a firearm and two counts of criminal threats. Ball did not move to set aside the amended information.

2.      *Analysis*

Ball contends the magistrate made factual findings that were "fatal" to the criminal threats offense charged in count 3, and therefore, the trial court erred in allowing the district attorney to refile count 3. While we agree with Ball that "the trial court and this court would be bound by any express factual findings made by the magistrate" based on evidence presented at the preliminary hearing (*People v. Barba* (2012) 211 Cal.App.4th 214, 228), here, the magistrate made no such factual findings. As Ball states in his opening appellate brief, the magistrate made "a legal conclusion" when it indicated that Ball's statement to Solana on February 22, 2020, did not satisfy "the immediacy element of section 422." The trial court was not bound by the magistrate's legal conclusion. (See *Barba*, at pp. 227-228.)

Ball next contends the trial court erred in allowing the district attorney to refile count 3 because the prosecution presented insufficient evidence at the preliminary hearing to support the charge. Assuming Ball preserved this claim for

19

appellate review, his challenge to the sufficiency of the evidence at the preliminary hearing is not well taken. "Where the evidence produced at trial amply supports the jury's finding, any question whether the evidence produced at the preliminary hearing supported the finding of probable cause is rendered moot. Even ' " '[i]f there is insufficient evidence to support the commitment, the defendant cannot be said to be prejudiced where sufficient evidence has been introduced at . . . trial' " ' to support the jury's finding as to the charge or as to the truth of the allegation." (*People v. Crittenden* (1994) 9 Cal.4th 83, 137; *People v. Letner and Tobin* (2010) 50 Cal.4th 99, 140.) As we concluded above, Ball's conviction for the February 22, 2020 criminal threats offense is supported by sufficient evidence presented at trial.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED

KLINE, J.[*]

We concur:

ROTHSCHILD, P. J.               WEINGART, J.

_____

[*] Retired Presiding Justice of the Court of Appeal, First Appellate District, Division Two, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

20