Filed 11/12/15  P. v. Wooten CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>WILLIAM FRED WOOTEN,<br><br>    Defendant and Appellant. | D067115<br><br><br>(Super. Ct. No. SCD253388) |

APPEAL from a judgment of the Superior Court of San Diego County,

Peter C. Deddeh, Judge.  Affirmed.

Gary V. Crooks, under appointment by the Court of Appeal, for Defendant and

Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Scott C.

Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted William Fred Wooten of making a criminal threat.  He appeals,

contending: (1) there was insufficient evidence to support his conviction; (2) the

prosecution failed to turn over impeachment evidence in violation of *Brady v. Maryland*

(1963) 373 U.S. 83 (*Brady*); (3) the trial court erred in admitting evidence that Wooten was a pimp and gang member and compounded that error with its jury instructions; (4) the trial court erred in admitting evidence that was not properly authenticated; (5) CALCRIM No. 1300 on the elements of making a criminal threat was improperly argumentative; (6) the trial court erred in denying his new trial motion; and (7) the prosecutor committed misconduct by allowing a witness to present false testimony. We reject these arguments and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Jene Yates suspected that her 16-year-old sister was acting as a prostitute for Wooten. Yates had seen an advertisement featuring her sister on a Web site known as "Backpage" where prostitutes post advertisements to find customers. The advertisement included a picture of Yates's sister in a bathing suit, provided the phone number from a cell phone Wooten had given Yates's sister, and stated that Yates's sister only did "out-calls," meaning she would travel to the customer's location.

On a morning in December 2013, Wooten texted Yates and asked for Yates's sister to come out of Yates's residence to return a cell phone to Wooten. Yates gave Wooten the cell phone. Later that morning, while Yates was at the courthouse on an unrelated matter, she saw that Wooten had posted comments about her on Facebook. Yates and Wooten were "friends" on Facebook, which allowed her to see posts on Wooten's Facebook page. Wooten posted:

> "Jene Yates no but this is bitched check this out but I'll don't give
> fuck about Nun of dat bitch nigga you keep write in on my shit on
> my be forced to send someone over kick your ass nigga you don't

2

know me last night I chould of squirted up fired up yo hole shit yu wasn't talking to shit wen I came an got my phone out I would of slapped your bitch ass."

Yates believed the comment was directed at her because Wooten had "tagged" her to see it. She thought the message meant that Wooten was "going to shoot up [her] house, or he was capable of shooting up [her] house" and that he was going to send someone over to beat her up. Yates was upset and crying when she saw the post. She showed it to a police officer at the courthouse who suggested that she file a police report. Yates took screen shots of the post to preserve it.

After Yates contacted the police, Wooten made another post on Facebook and tagged Yates and her sister in it. The second post stated,

"Bitch Idgaf ab yu nore yur Liddo mud rats set I said I'll FIRE YUR SHIT UP YUR CHEN IS WAT I MENT set but on PIRU YU CALL THE BABBIES ON MII THAT WILL BE THE WORST THING YU CKOULD EVER DO BITCH YU OLD BABBIE CALLIN WHORE LET MII AN YO NIGGA CATCH THE FADE INSTEAD OF CALLIN THE WHITE BOYS"

Yates understood the comment to mean that Wooten was telling her she did the wrong thing by calling the police, which Wooten referred to as "the babbies." Based on the second post, she also understood that Wooten was in the Piru gang and that Wooten or his gang partners were going to be at her house to start problems. She took a screenshot of the post.

Thereafter, Yates saw in her Facebook "news feed" that at some point Wooten had posted a picture of himself pointing a gun at the camera. Yates was terrified because Wooten had sent Yates's sister a message saying that Yates and her sister were on the

3

"hot sheet" for calling the police. Yates explained that being on the "hot sheet" meant that she could be beat up or killed by somebody from the same gang as the person who put her on the list.

Later that day, Yates left her home to go grocery shopping. As she was driving, she saw a group of males in a car, darting in and out of traffic to catch up with her. Yates called the police when she confirmed that Wooten was in the car. Yates was scared and crying.

Yates testified that she moved out of her house because she did not "want any surprise visitors" and did not feel safe in her home anymore. She explained that she could not drive down her street without looking over her shoulder to see if someone was following her. On cross-examination, Yates admitted that she moved out of her house in June 2014, approximately six months after Wooten's Facebook posts.

DISCUSSION

I. *Sufficiency of the Evidence*

Wooten contends there was insufficient evidence to support his conviction for making a criminal threat. We disagree.

"When a defendant challenges the sufficiency of the evidence, ' "[t]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]' [Citations.] 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.

4

[Citation.]'  [Citation.]  We ' " 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " ' " (*People v. Clark* (2011) 52 Cal.4th 856, 942-943.)  " 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.  [Citation.]  We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.  [Citation.]'  [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

To prove a defendant made a criminal threat in violation of Penal Code section 422, subdivision (a), "the prosecution must establish all of the following: (1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement  . . .  is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made,  . . .  so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the

5

circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228; undesignated statutory references are to the Penal Code.)

We look to all the surrounding circumstances to determine if there was substantial evidence to prove the elements of making a criminal threat. (*People v. Wilson* (2010) 186 Cal.App.4th 789, 814; *People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1340.) Thus, a facially ambiguous communication can qualify as a threat when its meaning is clarified by the surrounding circumstances. (*In re George T.* (2004) 33 Cal.4th 620, 635.)

Wooten challenges the sufficiency of the evidence as to each element of the offense. As to whether he willfully threatened to kill or cause great bodily injury, Wooten contends his Facebook posts were "angry utterances and ranting soliloquies" rather than threats. Although the Facebook posts were partially unintelligible, they do reveal a threat. Wooten posted "you keep write in on my shit on my be forced to send someone over kick your ass nigga you don't know me last night I chould of squirted up fired up yo hole shit." After Yates contacted the police, Wooten posted, "I said I'll FIRE YUR SHIT UP YUR CHEN IS WAT I MENT." Properly considering Wooten's statements as part of the entire course of events, including that Wooten and Yates were engaged in a dispute about Yates's sister and Yates had called the police regarding Wooten, we conclude his Facebook posts constituted a willful threat to either shoot or beat up Yates. There was also sufficient evidence that Wooten specifically intended his statements to be taken as a threat. Wooten "tagged" Yates in the posts, referenced a gang, and told Yates's sister that she and Yates were on the "hot sheet." This evidence was

6

sufficient to establish that Wooten's Facebook posts were more than angry rants. Rather, he intended to convey a threat.

"With respect to the requirement that a threat be 'so unequivocal, unconditional, immediate, and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat,' " our high court explained "that the word 'so' in section 422 meant that ' "unequivocality, unconditionality, immediacy and specificity are not absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances . . . ." ' [Citations.] 'The four qualities are simply the factors to be considered in determining whether a threat, considered together with its surrounding circumstances, conveys those impressions to the victim.' " (*In re George T.*, *supra*, 33 Cal.4th at p. 635.) Thus, a " 'threat is not insufficient simply because it does "not communicate a time or precise manner of execution, section 422 does not require those details to be expressed." ' " (*People v. Wilson*, *supra*, 186 Cal.App.4th at p. 806.)

Here, Wooten's statements and surrounding circumstances conveyed a gravity of purpose and immediate prospect of execution. Wooten first threatened that if Yates continued to "keep write in on [his] shit," he would be forced to send someone over to beat her up. Thereafter, he stated that calling the police was the worst thing Yates could have done and referenced his prior statement about shooting up her house. Based on the parties' relationship, their dispute over Yates's sister, the manner and timing of Wooten's statements, the communications were sufficiently unequivocal, unconditional, immediate, and specific as to convey those impressions to Yates.

7

We also conclude there was sufficient evidence to establish that Yates was in sustained fear and that her fear was reasonable. Section 422 does not define the term "sustained fear," and case law provides no limitation on the minimum amount of time a victim must experience fear in order to satisfy the "sustained fear" requirement. However, the court in *People v. Allen* (1995) 33 Cal.App.4th 1149, defined sustained fear as meaning a "period of time that extends beyond what is momentary, fleeting, or transitory." (*Id.* at p. 1156; see also *In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1140.) Yates testified that when she saw Wooten's Facebook posts, she broke down crying and was terrified. She immediately asked a police officer what she should do and subsequently filed a police report. Thereafter, she was scared and crying again when she saw Wooten and other males in a car darting in and out of traffic to catch up with her. Further, Yates testified that she did not feel safe in her home anymore and could no longer drive down her street without looking over her shoulder to see if someone was following her. This evidence was amply sufficient to meet the sustained fear requirement.

Under the circumstances, Yates's fear was reasonable. Wooten threatened to send someone over to beat Yates up, talked about shooting up her house, referenced a gang, and communicated that Yates was on the "hot sheet." Yates had also seen a picture of Wooten pointing a gun in a menacing manner. Based on this evidence, a jury could easily find that Yates's fear was reasonable.

Based on the foregoing, we conclude there was sufficient evidence to support Wooten's conviction for making a criminal threat.

8

## II. *Alleged Brady Error*

### A. Additional Facts

Wooten moved for a new trial based on newly discovered evidence. Specifically, he alleged that after his trial, he obtained evidence discrediting Yates's testimony that she moved from her residence due to fear for her personal safety. Wooten's investigator, Jose Newman, submitted a declaration stating he reviewed court records and found that an unlawful detainer action was filed against Yates in June 2014 for nonpayment of rent. The unlawful detainer action showed that Yates was served with a three-day notice to pay rent or quit in May 2014. Newman contacted the apartment manager and learned that the tenants of the apartment were not legally evicted until September 2014.

At the hearing on Wooten's new trial motion, the prosecutor revealed that the District Attorney's office was involved in moving Yates out of her apartment after evaluating her safety. The trial court denied Wooten's new trial motion.

### B. General Legal Principles

"In *Brady*, the United States Supreme Court held that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' [Citation.] Thus, under *Brady* and its progeny, the state is required to disclose to the defense any material, favorable evidence. [Citations.] Favorable evidence includes both evidence that is exculpatory to the defendant as well as evidence that is damaging to the prosecution, such as evidence that impeaches a government witness." (*People v. Uribe* (2008) 162 Cal.App.4th 1457, 1471-1472.)

9

Materiality "requires more than a showing that the suppressed evidence would have been admissible [citation], that the absence of the suppressed evidence made conviction 'more likely' [citation], or that using the suppressed evidence to discredit a witness's testimony 'might have changed the outcome of the trial' [citation].  A defendant instead 'must show a "reasonable probability of a different result." ' "  (*People v. Salazar* (2005) 35 Cal.4th 1031, 1042-1043 (*Salazar*).)

There are three elements to a *Brady* claim: (1) the evidence must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) defendant suffered prejudice.  (*Salazar*, *supra*, 35 Cal.4th at p. 1043.)  "Prejudice, in this context, focuses on 'the materiality of the evidence to the issue of guilt or innocence.' "  (*Ibid*.)  " 'In general, impeachment evidence has been found to be material where the witness at issue "supplied the only evidence linking the defendant(s) to the crime," [citations], or where the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case, [citations].  In contrast, a new trial is generally not required when the testimony of the witness is "corroborated by other testimony." ' "  (*Id*. at p. 1050.)  "Conclusions of law or of mixed questions of law and fact, such as the elements of a *Brady* claim [citation], are subject to independent review.  [Citation.]  Because the [trier of fact] can observe the demeanor of the witnesses and their manner of testifying, findings of fact, though not binding, are entitled to great weight when supported by substantial evidence."  (*Id*. at p. 1042.)

C.  Analysis

Wooten contends the prosecutor committed *Brady* error by failing to disclose that Yates moved from her home because she was evicted for nonpayment of rent.  He argues that evidence undermined a critical element of the case, namely that Yates moved because she was in sustained fear.  We reject this argument.

Wooten forfeited his claim of *Brady* error by failing to raise it in the trial court.  At the time of his new trial motion, Wooten was aware of the eviction proceedings against Yates.  However, he did not raise a *Brady* claim and instead only requested a new trial based on newly discovered evidence.  (*People v. Carpenter* (1997) 15 Cal.4th 312, 411 [a *Brady* claim based on evidence that was known or available to counsel at trial is waived where counsel does not object below].)

In any event, Wooten failed to demonstrate a *Brady* violation.  Under *Brady* the prosecution only has a duty to turn over material evidence *known* to it.  (See *Salazar*, *supra*, 35 Cal.4th at p. 1042.)  Specifically, "[i]n order to comply with *Brady*, . . . 'the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.' "  (*Ibid*.)  *Brady* merely serves " 'to restrict the prosecution's ability to suppress evidence rather than to provide the accused a right to criminal discovery.' "  (*People v. Morrison* (2004) 34 Cal.4th 698, 715.)

Here, there is no indication that the prosecution or any of its agents possessed information about the unlawful detainer action against Yates.  While the prosecutor stated that the District Attorney's office conducted a safety evaluation and was involved in

11

moving Yates, there is nothing in the record that the prosecution or any agency connected to the prosecution actually or constructively knew of Yates's nonpayment of rent and related eviction proceedings. Thus, Wooten did not establish, as required for a *Brady* violation, that the " 'evidence [was] suppressed by the State, either willfully or inadvertently.' " (*Salazar*, *supra*, 35 Cal.4th at p. 1043.)

Additionally, Wooten failed to establish that, by failing to turn over the evidence at issue, the prosecution caused Wooten to suffer prejudice. (*Salazar*, *supra*, 38 Cal.4th at p. 1043.) For the purposes of a *Brady* analysis, "[e]vidence is 'material' 'only if there is a reasonable probability that, had [it] been disclosed to the defense, the result . . . would have been different.' . . . The requisite 'reasonable probability' is a probability sufficient to 'undermine[] confidence in the outcome' on the part of the reviewing court. . . . It is a probability assessed by considering the evidence in question under the totality of the relevant circumstances and not in isolation or in the abstract." (*In re Sassounian* (1995) 9 Cal.4th 535, 544, citations omitted.)

We are not persuaded by Wooten's argument that had the defense known about the eviction proceedings against Yates, a different result would have been reasonably probable because the evidence would have seriously damaged Yates's credibility on a crucial issue. While information concerning Yates's nonpayment of rent and the unlawful detainer action against her would have been helpful to the defense, the evidence that Yates moved from her home was not the only evidence of her sustained fear. Rather, the prosecution presented evidence that Yates was terrified, broke down crying, and spoke to a police officer when she saw Wooten's Facebook posts. Thereafter, Yates was scared

12

and broke down crying again when she saw a group of males, including Wooten, following her. Yates testified that she could no longer drive down her street without looking over her shoulder to see if someone was following her.

Moreover, defense counsel devalued Yates's testimony that she moved from her home due to fear by establishing that Yates did not move until six months after she saw Wooten's threatening posts. As a result, information regarding the eviction proceedings against Yates would only marginally have helped Wooten's case and it is not reasonably probable that the jury would have reached a different result.

## III. *Evidentiary Issues*

A. Admission of Evidence That Wooten Was a Gang Member and Pimp

1. *Background*

Prior to trial, Wooten sought to exclude testimony from Yates that she believed he was a pimp and a gang member. Defense counsel argued the evidence was not relevant and was highly prejudicial. The court allowed the evidence, concluding that it was relevant to Yates's state of mind and whether her fear was reasonable. The court found the probative value of the evidence was not outweighed by its prejudicial effect.

Wooten also objected to the admission of the photograph of Yates's sister from the Backpage Web site. The court concluded the photograph was relevant to Yates's state of mind and to corroborate her concerns about Wooten's relationship with her sister.

The court gave a limiting instruction regarding the evidence. Specifically, the court instructed the jury with the following: "You have heard evidence about the Piru Street Gang and about pimping/prostitution. This evidence can only be used to evaluate

13

the victim's state of mind and for no other purpose.  There is no evidence that the Defendant is a gang member or a pimp and there is no evidence that he is involved in gang activities or prostitution."

2. *Analysis*

Wooten argues the trial court violated his constitutional right to due process and a fair trial by admitting evidence that he was a pimp and a gang member.  Specifically, he contends the trial court erred by admitting the photograph of Yates's sister from the Backpage Web site and by allowing Yates to testify that she believed Wooten was a pimp and gang member.  Wooten further contends that the trial court compounded its error by instructing the jury that there was no evidence that Wooten was a gang member or a pimp, but the jury could use the information it heard about the Piru gang and pimping to evaluate the victim's state of mind.  We reject Wooten's arguments.

"Under Evidence Code section 352, the trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time."  (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125.)  "We review a trial court's ruling under Evidence Code section 352 for abuse of discretion and will reverse a trial court's exercise of discretion to admit evidence 'only if "the probative value of the [evidence] clearly is outweighed by [its] prejudicial effect." ' "  (*People v. Valdez* (2012) 55 Cal.4th 82, 133.)  " 'Prejudice for purposes of [Evidence Code section 352] means evidence that tends to evoke an emotional bias against the defendant with very little effect on issues, not evidence that is probative of a defendant's guilt.' "  (*Ibid*.)  Even if this court might not have made the

14

same decision as the trial court, we must defer to the lower court's proper exercise of its discretion. (*People v. Rodrigues*, *supra*, 8 Cal.4th at pp. 1124-1125.) The court's exercise of this discretion " 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*Ibid*.)

Here, Yates testified that she believed that Wooten was pimping her sister. Yates performed an Internet search for the phone number of the phone that Wooten had given her sister and found her sister's Backpage advertisement. As a result, Yates and Wooten engaged in a dispute about Yates's sister. Thereafter, Wooten went to Yates's house to retrieve the cell phone he had provided to Yates's sister, which led to Wooten's threatening Facebook posts.

Yates's belief that Wooten was her sister's pimp and the Backpage advertisement that Yates found on the Internet were relevant to give context to Wooten's Facebook posts. In his first post, Wooten referenced going to Yates's house to retrieve his phone and stated that he would send someone over to beat Yates up if she "[kept] write in on [his] shit." Thus, Wooten's and Yates's interactions prior to the Facebook posts were relevant to explain their relationship and the meaning of Wooten's posts. Moreover, the evidence was relevant to whether Yates was in sustained fear and the reasonableness of that fear, which are essential elements to establish the crime of making a criminal threat. (§ 422; see also *In re David L.* (1991) 234 Cal.App.3d 1655, 1659 [circumstances surrounding the threat and the "climate of hostility" between the defendant and victim demonstrated that the victim's fear was reasonable].)

15

Similarly, Yates's testimony that she believed "on Piru" in Wooten's second Facebook post referenced his gang affiliation was relevant to her fear and Wooten's intent to convey a threat. As the trial court aptly noted, when a person invokes gang terminology, it implies that the person is going to follow through with his threat. Yates's understanding that "Piru" referenced a gang was certainly relevant to the severity and reasonableness of her fear. (*People v. Garrett* (1994) 30 Cal.App.4th 962, 967 [victim's knowledge of the defendant's prior manslaughter conviction was relevant to whether defendant's statement would be taken as a threat, whether victim was reasonably in sustained fear, and whether the nature of the statement conveyed an immediate prospect of execution].)

Based on the foregoing, we conclude the trial court acted well within its discretion in admitting the challenged evidence as it was more probative to the issues in the case than prejudicial.

We also reject Wooten's argument that the trial court compounded its alleged error in admitting the gang and pimp evidence by instructing the jury that they could use that evidence to evaluate the victim's state of mind. As we explained, the evidence was relevant to prove whether Yates was reasonably in sustained fear. Thus, the trial court's instruction appropriately instructed the jury that although there was no evidence that Wooten was a gang member or pimp, it could use the evidence it heard about the Piru gang, pimping and prostitution to evaluate Yates's state of mind and for no other purpose. The trial court also instructed the jury that evidence admitted for a limited purpose could only be considered for that purpose and for no other purpose (CALCRIM No. 303). We

16

must presume the jury understood and followed these instructions.  (*People v. Young* (2005) 34 Cal.4th 1149, 1214.)

B.  Authentication

Wooten argues the trial court erred in admitting the Facebook postings because they were not properly authenticated.  Specifically, he contends the Facebook evidence was not properly authenticated because there was no evidence from a police technician about how the computer file was created, preserved, handled or printed, no testimony from a Facebook employee about the file on its servers or who had access to it, and no testimony from the page creators or people who posted remarks concerning whether it was privacy protected.  We reject these contentions.

Wooten forfeited his authentication argument by failing to object on that ground in the trial court.  (*People v. Williams* (1997) 16 Cal.4th 635, 661-662.)  He only raised an objection based on hearsay, which was overruled.  Wooten contends his hearsay objection preserved his authenticity objection.  We are not persuaded.

"While no particular form of objection is required [citation], the objection must be made in such a way as to alert the trial court to the nature of the anticipated evidence and the basis on which exclusion is sought, and to afford the People an opportunity to establish its admissibility."  (*People v. Williams* (1988) 44 Cal.3d 883, 906; Evid. Code, § 353.)  " '[T]he 'defendant's failure to make a timely and specific objection' on the ground asserted on appeal makes that ground not cognizable.' "  (*People v. Partida* (2005) 37 Cal.4th 428, 433-434.)  Wooten's hearsay objection did not alert the court that he was challenging the Facebook evidence on authentication grounds.

17

In any event, the Facebook posts were properly authenticated. "[W]hile all writings must be authenticated before they are received into evidence [citation], the proponent's burden of producing evidence to show authenticity [citation] is met 'when sufficient evidence has been produced to sustain a finding that the document is what it purports to be. [Citation.]' [Citation.] The author's testimony is not required to authenticate a document [citation]; instead, its authenticity may be established by the contents of the writing [citation] or by other means . . . . 'As long as the evidence would support a finding of authenticity, the writing is admissible. The fact conflicting inferences can be drawn regarding authenticity goes to the document's weight as evidence, not its admissibility. [Citations.]' [Citation.] ' "[L]ike any other material fact, the authenticity of a [document] may be established by circumstantial evidence. . . ." ' " (*People v. Valdez* (2011) 201 Cal.App.4th 1429, 1435.) Further, a photograph may be authenticated " 'by the testimony of anyone who knows that the picture correctly depicts what it purports to represent.' " (*People v. Chism* (2014) 58 Cal.4th 1266, 1303.)

Yates testified that she accepted a "friend request" from Wooten on Facebook, which allowed her to see things that he posted. She also stated that Wooten "tagged" her on the threatening posts at issue in this case, meaning that he wanted her to see the posts. Yates took screen shots to preserve the Facebook posts. Those posts referenced the incident the prior night when Wooten retrieved his phone from Yates and her subsequent contact with the police. Yates testified that the exhibit the prosecutor showed her at trial was a fair and accurate depiction of the screen shots that she took.

18

Similarly, Yates testified that she saw the picture of Wooten holding a gun on her Facebook "news feed."  She explained that a "news feed" is where you can see posts, pictures and other items from your Facebook "friends."  She testified that the photograph of Wooten holding a gun presented at trial was a fair and accurate depiction of what she received in her "news feed."

The contents of the threatening Facebook posts and photograph, the circumstances under which Yates received them, and Yates's testimony about how she preserved them was sufficient to establish the documents were what they purported to be.  As such, the prosecution met its authentication burden by making a showing on which "the trier of fact reasonably could conclude the proferred writing[s] [were] authentic."  (*People v. Valdez*, *supra*, 201 Cal.App.4th at p. 1437.)  Wooten was, of course, free to argue other inferences, including that he did not author the posts or that they were altered or falsified.  Those arguments, however, go to the weight of the evidence rather than its admissibility.

IV.  *CALCRIM No. 1300*

The trial court instructed the jury with CALCRIM No. 1300, as follows:

"The defendant is charged in Count One with having made a criminal threat in violation of Penal Code section 422.

"To prove that the defendant is guilty of this crime, the People must prove:

"1.  The defendant willfully threatened to unlawfully kill or unlawfully cause great bodily injury to Jene Yates or her immediate family;

"2.  The defendant made the threat by electronic communication device;

19

"3.  The defendant intended that his statement be understood as a threat and intended that it be communicated to Jene Yates;

"4.  The threat was so clear, immediate, unconditional, and specific that it communicated to Jene Yates a serious intention and the immediate prospect that the threat would be carried out;

"5.  The threat actually caused Jene Yates to be in sustained fear for her own safety or for the safety of her immediate family;

"AND

"6.  Jene Yates' fear was reasonable under the circumstances."

Wooten argues CALCRIM No. 1300, as given in this case, was argumentative and directed the verdict.  Specifically, he contends that because elements two, four and five referred to "the threat," the instruction directed the jury that a threat was already established.  He further contends that because element six referred to "Jene Yates' fear," the instruction removed from the jury's consideration whether she had fear.  We reject these arguments.

When a defendant raises claims of instructional error, " 'we must first ascertain what the relevant law provides, and then determine what meaning the instruction given conveys.  The test is whether there is a reasonable likelihood that the jury understood the instruction in a manner that violated the defendant's rights.' " (*People v. Smith* (2008) 168 Cal.App.4th 7, 13.)  "Further, in examining the entire charge we assume that jurors are ' " ' "intelligent persons and capable of understanding and correlating all jury instructions which are given." ' " ' " (*Ibid*.)  "Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably

20

susceptible to such interpretation." (*People v. Laskiewicz* (1986) 176 Cal.App.3d 1254, 1258.)

" 'A jury instruction is . . . argumentative when it is " 'of such a character as to invite the jury to draw inferences favorable to one of the parties from specified items of evidence.' " ' " (*People v. Campos* (2007) 156 Cal.App.4th 1228, 1244.)  A party "does not have a right to an instruction that would improperly imply the conclusion to be drawn from [the] evidence." (*People v. Harris* (1989) 47 Cal.3d 1047, 1098, fn. 31.)

Wooten's instructional error claim is unavailing because it is premised on a distortion of the language of the instruction.  CALCRIM No. 1300 properly states the elements of making a criminal threat in violation of section 422.  The instruction required the jury to determine the first element of the offense, whether Wooten willfully threatened to kill or cause great bodily injury to Yates or her immediate family.  In elements two, four and five, the instruction referred to "the threat."  No reasonable juror would have interpreted the subsequent references to "the threat" as stating that Wooten had in fact made a threat and as eliminating the requirement of the first element to determine whether he made a threat.  Similarly, no reasonable juror would have read element six regarding the reasonableness of Yates's fear as eliminating the requirement of element five to find that the threat actually caused her to be in sustained fear.

CALCRIM No. 1300, as given to the jury in this case, does not imply conclusions to be drawn from the evidence or direct the jury that any particular element was established.  Wooten's argument isolates specific phrases within the instruction and does not consider the instruction in totality.  We must read the instruction as a whole rather

21

than isolating specific phrases or parts. (*People v. Smith*, *supra*, 168 Cal.App.4th at p. 13 [a reviewing court "determine[s] the correctness of the jury instructions from the entire charge of the court, not from considering only parts of an instruction or one particular instruction"].) Based on the full instruction, we reject Wooten's contention that it was argumentative and directed the jury's findings.

## V. *New Trial Motion*

### A. Background

Following his conviction, Wooten moved for a new trial. He argued: (1) the trial court erred in admitting the photograph of him holding a gun because it was not properly authenticated; (2) there was insufficient evidence to support the jury's verdict; (3) trial counsel was ineffective because he failed to adequately investigate Yates and retain an expert witness on the operation of social media Web sites; (4) the trial court erred by admitting prejudicial gang evidence; and (5) a different result was reasonably probable in light of newly discovered evidence regarding Yates's nonpayment of rent. The trial court denied Wooten's new trial motion.

### B. Analysis

Wooten argues each ground asserted in his new trial motion was valid and thus, the trial court erred in denying the motion. We have already addressed and rejected the first, second, and fourth issues raised in Wooten's new trial motion regarding the authentication of evidence, sufficiency of the evidence to support the verdict and admission of gang evidence. (*Ante*, pts. I & III.) Additionally, in discussing Wooten's claim of *Brady* error, we rejected his argument that a different result was reasonably

probable in light of evidence that Yates failed to pay her rent and was subject to eviction proceedings. (*Ante*, pt. II.C.) For those same reasons, we reject his contention that the trial court erred in denying his new trial motion based on newly discovered evidence.

We address Wooten's remaining argument concerning alleged ineffective assistance of counsel. He contends his counsel provided ineffective assistance by failing to adequately investigate Yates and discover the eviction proceedings against her. We reject this argument.

To establish ineffective assistance of counsel, Wooten must show, by a preponderance of the evidence, that his counsel's representation fell below the standard of a competent advocate and a reasonable probability exists that, but for counsel's errors, the result would have been different. (*People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.) A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. (*People v. Bolin* (1998) 18 Cal.4th 297, 333.) Assuming, without deciding, that defense counsel's failure to discover and present evidence of the eviction proceedings against Yates was constitutionally deficient, Wooten has not established prejudice sufficient to create a reasonable probability that a different result would have occurred in the absence of the claimed error.

Wooten claims the new evidence would have impeached Yates's credibility and undermined her claim that she was in sustained fear, which was an essential element of the crime. However, as we previously explained, there was other significant evidence that Yates was in sustained fear as a result of Wooten's threatening Facebook posts. (*Ante*, pt. II.) Yates testified that she was terrified, broke down crying, and immediately

23

spoke to a police officer upon seeing Wooten's messages. She was scared and crying again when she saw Wooten and other males in a car darting in and out of traffic to catch up with her. She further testified that she could no longer drive down her street without looking over her shoulder to see if someone was following her. Moreover, defense counsel cross-examined Yates about when she moved from her home, which revealed to the jury that she did not move until six months after she saw Wooten's threatening posts.

Based on the totality of the evidence, it was not reasonably probable that, but for counsel's assumed errors, the result would have been different. (*People v. Ledesma*, *supra*, 43 Cal.3d at pp. 216-218.) Thus, the court did not err in denying Wooten's new trial motion, and Wooten has not shown that a new trial is required based on ineffective assistance of counsel.

## VI. *Alleged Prosecutorial Misconduct*

Wooten argues the prosecutor committed prejudicial misconduct by allowing Yates to present false testimony, namely that she moved from her residence due to fear. Wooten contends the prosecutor knew about the eviction proceedings against Yates and was required to inform him and the court that Yates did not tell the whole truth.

"If the prosecution knows or should know that testimony was false, the prosecution cannot allow the false testimony of its witnesses to stand uncorrected." (*People v. Kasim* (1997) 56 Cal.App.4th 1360, 1386.) "[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment. [Citations.] The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected

24

when it appears." (*Napue v. Illinois* (1959) 360 U.S. 264, 269.) "This obligation . . . applies even if the false or misleading testimony goes only to witness credibility." (*People v. Morrison* (2004) 34 Cal.4th 698, 717.)

Here, Wooten's argument of prosecutorial misconduct fails because Yates's testimony was not demonstrably false or misleading and there is no indication in the record that the prosecutor knew it was false or misleading. Yates testified that she moved out of her home because she did not feel safe there anymore. Although there were eviction proceedings pending against Yates, that evidence was not inconsistent with Yates's testimony about her fear. As defense counsel acknowledged, Yates moved from her home in June 2014, which was after she received a three-day notice to pay rent or quit, but approximately three months before she was legally evicted. Thus, the evidence did not contradict Yates's testimony that she moved because she was afraid. Similarly, the prosecutor's statement that the District Attorney's office conducted a safety evaluation and was involved in moving Yates is consistent with Yates's testimony. Lastly, we see nothing in the record to suggest that the prosecutor was aware of the eviction proceedings. Rather, the prosecutor stated that the District Attorney's involvement resulted from a safety evaluation.

In sum, we cannot say that the prosecutor committed misconduct or violated Wooten's due process rights by allowing Yates to testify that she moved out of fear. Thus, we reject Wooten's argument.

DISPOSITION

The judgment is affirmed.


McINTYRE, J.

WE CONCUR:


BENKE, Acting P. J.


IRION, J.