Filed 2/2/16  P. v. Perry CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E063225 |
| v. | (Super.Ct.No. RIF1300496) |
| ROBERT PERRY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Thomas E. Kelly, Judge. (Retired judge of the Santa Cruz Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, and Annie Featherman Fraser, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I

# INTRODUCTION

Defendant Robert Perry threatened at gunpoint two men who were engaged in legally repossessing his car. A jury convicted defendant of eight criminal charges: counts 1 and 2 for carjacking (Pen. Code, § 215, subd. (a));[1] counts 3 and 4 for making criminal threats (§ 422); counts 5 and 6 for witness intimidation (§ 136.1, subd. (c)(1)); and counts 7 and 8 for assault with a firearm (§ 245, subd. (a)(2).) Each count was subject to an enhancement for personal use of a firearm. (§§ 12022.5, subd. (a); 12022.53, subd. (b).) The court sentenced defendant to prison for 28 years eight months.[2]

On appeal, defendant's only argument is that the trial court erred by imposing consecutive, rather than stayed, sentences on counts 3 and 4 (criminal threats), and counts 5 and 6 (witness intimidation), a total of six years eight months. We conclude that substantial evidence supports the trial court's determination that defendant acted with separate intents and objectives in committing his various crimes. We affirm the judgment.

---

[1] All statutory references are to the Penal Code unless stated otherwise.

[2] The sentence was as follows: 15-year term for carjacking and gun use on count 1; a consecutive five-year term for carjacking and gun use on count 2; two consecutive two-year terms for criminal threats and gun use on counts 3 and 4; two consecutive terms of two years four months for witness intimidation and gun use on counts 5 and 6; and two stayed sentences on counts 7 and 8.

II

BACKGROUND

*A. The Trial*

Defendant was in default on the loan for a 2003 Chevrolet Tahoe. Mission Financial Services initiated repossession of the vehicle by Jose Salgado[3] and his trainee, Jose Palomo. At 7:00 p.m. on January 11, 2013, Salgado entered a gated apartment complex and found the vehicle. Palomo verified the vehicle identification number. Salgado began to secure the Tahoe to his tow truck by lifting it and strapping down the wheels.

While Salgado was so engaged, defendant and another man approached Salgado and said the vehicle belonged to defendant. Defendant and the second man left but defendant returned. Salgado asked for the keys and told defendant he could remove his personal items. Defendant refused to give up the keys.

Instead, defendant pulled out a black handgun and pointed it at Salgado and Palomo. With his finger on the trigger, defendant ordered them to "drop" the Tahoe or he would shoot them. Both men feared for their lives. They obeyed defendant and released the vehicle. When they started to leave, defendant threatened to kill them if they called the police. Defendant entered the Tahoe and left with the other man, who had returned during the incident.

_____

[3] Salgado is his preferred surname.

Salgado and Palomo drove away in the tow truck and called the police from a nearby store. Salgado and Palomo identified defendant as the armed man who departed in the Tahoe.

Alicia Walmsley witnessed the incident and called the sheriff's department. She did not identify defendant from a photographic lineup but she identified him in court as being the man with a gun.

Defendant testified and denied having a weapon or pointing a gun at anyone. Defendant blamed what happened on a friend who resembled him. Defendant did not want to identify his friend because he was in a gang and on probation or parole.

## B. *Sentencing Hearing*

At the sentencing hearing, the trial court explained its sentencing choices. It selected the middle term of five years on count 1 for carjacking: "[T]his is not a probation type of case. Violent felonies with a gun, very terrifying situation." As for the consecutive sentence on count 2 for carjacking, the court stated: "Count 2 is the same charge, same enhancement for the second victim. [Section] 654 is not a bar, and you have violent crimes against people . . . ."

Regarding the two counts for criminal threats, the court reasoned the criminal threats were "separate and beyond" the carjacking offenses because defendant could have stopped once he got the vehicle back and "accomplished the objective." At that point, defendant did not need to proceed and the "criminal threats [are] clearly above and beyond" and "there was time to reflect on what he was doing."

4

Regarding the two counts for witness intimidation, the court repeated: "Again, I feel that there was time to reflect. There was no need to make this additional threat, and it should be punished separately . . . 654 is not a bar. It should be consecutive. They are different victims, different behavior." For these reasons and because there were two separate victims, the court imposed all four counts consecutively.

III

SECTION 654

Defendant argues the trial court improperly sentenced him to four consecutive sentences on criminal threats and witness intimidation because those crimes were committed to accomplish the carjacking. The People counter that the trial court based its sentencing choices on different intents and objectives. We agree with the People's position.

Section 654 precludes punishment for two offenses arising from the same act. Section 654 applies where a course of conduct violates more than one statute, depending on the intent and objective of the defendant. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208.) If the defendant entertained multiple criminal objectives that were independent of and not incidental to each other, he may be punished for multiple violations. (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) "The defendant's intent and objective present factual questions for the trial court, and its findings will be upheld if supported by substantial evidence. (*People v. Monarrez* (1998) 66 Cal.App.4th 710, 713.) 'We review the court's determination of [a defendant's] "separate intents" for sufficient evidence in a

light most favorable to the judgment, and presume in support of the court's conclusion the existence of every fact the trier of fact could reasonably deduce from the evidence. [Citation.]' (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 271.)" (*People v. Andra* (2007) 156 Cal.App.4th 638, 640-641.)

The California Supreme Court has discussed the application of section 654 to the crime of carjacking and related crimes of robbery and home invasion, focusing on the distinctiveness and the escalating violence of the crimes as they progressed: "'"'Carjacking' is the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or immediate presence of a passenger of the motor vehicle, against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear.'" (*People v. Ortega* (1998) 19 Cal.4th 686, 693; see § 215.) The completed offense of carjacking requires 'asportation or movement of the motor vehicle.' (*People v. Lopez*[2003] 31 Cal.4th 1051, 1055.) Carjacking is thus distinct from ordinary automobile theft because it is a crime accomplished by fear or force. . . . Here, carjacking is a crime of violence, distinct from robbery, and not merely a violation of the victims' property interest in their motor vehicle. It is also, of course, distinct from home invasion robbery because it involves the taking of a motor vehicle from the victims' persons or immediate presence. [¶] . . . [¶]

". . . Defendant was charged in each incident with, and the jury convicted him of, two distinct crimes of violence against the victims, robbery and carjacking. The temporal

6

proximity of the two offenses is insufficient by itself to establish that they were incident to a single objective. Rather, viewing the evidence in the light most favorable to the trial court's ruling, we affirm its conclusion that defendant harbored separate objectives for each offense and was appropriately punished for both. [¶] . . . Had defendant simply intended to commit a carjacking, he could have done so at the initial point of contact. The evidence reveals, however, that defendant had another, distinct purpose—to rob (and commit other crimes) inside the victims' homes. The elevation of the threat to the victims by forcing them into their homes where defendant committed additional crimes amounts to a separate criminal objective. . . . Accordingly, we find no error in the court's refusal to stay the sentence on the carjacking counts." (*People v. Capistrano* (2014) 59 Cal.4th 830, 886-887.)

A similar analysis applies in the present case. Defendant was charged with, and the jury convicted him of, six distinct crimes of escalating violence against the victims— carjacking, criminal threats, and witness intimidation. As in *Capistrano*, the temporal proximity of the offenses is insufficient by itself to establish that they were incidental to a single objective. Had defendant intended only to stop the repossession of his car, he could have done so without escalating the situation. By itself, brandishing a weapon could have instilled sufficient force and fear in the victims in order to accomplish his purpose of carjacking without the additional verbal threats to shoot Salgado and Palomo. As such, defendant's criminal threats involved separate criminal objectives. (*People v. Neely* (2004) 124 Cal.App.4th 1258, 1264.)

7

Defendant's subsequent witness intimidation—by threatening to kill Salgado and Palomo if they called the police were made after they had released the Tahoe and were trying to leave the apartment complex—also involved separate criminal objectives. We agree with the People that this case differs from *People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1337-1338, involving the intertwined crimes of making a terrorist threat to commit the crime of witness intimidation. Rather, defendant had committed the carjacking before engaging in witness intimidation. We reach this conclusion even if defendant threatened to kill the two victims immediately before he drove away in the Tahoe. Viewing the evidence as we must, in the light most favorable to the trial court's ruling, we affirm its conclusion that defendant harbored separate objectives for each of the six offenses and was appropriately punished for all of them.

IV

DISPOSITION

We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

HOLLENHORST

Acting P. J.

MILLER

J.

8