Filed 8/11/21  P. v. Robles CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RONOLDY MARQUEZ ROBLES,<br><br>Defendant and Appellant. | F080838<br><br>(Super. Ct. No. DF014564A)<br><br>**OPINION** |

-ooOoo-

### THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  Robert S. Tafoya, Judge.

Cynthia L. Barnes, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Craig S. Meyers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Franson, Acting P.J., Snauffer, J. and DeSantos, J.

Defendant Ronoldy Marquez Robles stands convicted of two counts of making criminal threats, two counts of resisting an executive officer, and one count of resisting a peace officer. He was sentenced to a five-year term of imprisonment. On appeal, he contends (1) the evidence was insufficient to support the convictions for making criminal threats and (2) the sentence on count 4 (resisting an executive officer) should have been stayed pursuant to Penal Code section 654.[1] The People disagree on both accounts. We affirm.

## PROCEDURAL SUMMARY

On August 27, 2019, the Kern County District Attorney charged defendant with two counts of making criminal threats (§ 422; counts 1 & 2), two counts of resisting an executive officer by force or violence (§ 69; counts 3 & 4), and one count of misdemeanor resisting a peace officer (§ 148, subd. (a)(1); count 5).

On November 4, 2019, the jury found defendant guilty on all counts.

On February 19, 2020, the trial court sentenced defendant to a five-year term of imprisonment as follows: on count 1, three years (the upper term); on each of counts 2, 3, and 4, eight months (one-third of the middle term) to be served consecutively; and on count 5, 180 days in jail, to be served concurrently.

On February 20, 2020, defendant filed a notice of appeal.

## FACTUAL SUMMARY

On August 9, 2019, at about 1:00 p.m., while City of Delano Police Officers Lloyd Galutira and Alexandra Baker were on a call they were asked by a passerby to check the welfare of a man lying face down in the front yard of a residence. When Galutira, Baker, and Corporal Ferdinand Rivera arrived at the residence, they saw defendant asleep on the porch or the lawn. Galutira and Baker had both interacted with defendant in the past. Based on prior interactions with defendant, Galutira and Baker knew defendant to be

---

[1]     All further statutory references are to the Penal Code unless otherwise stated.

aggressive when under the influence of alcohol. Galutira and Baker approached defendant. Galutira called defendant's name and announced himself as a police officer. Defendant woke up, stumbled, and began speaking to the officers in a slow and slurred manner. Specifically, when defendant saw the officers, he turned to Baker and said, "[O]h, it's you." Galutira and Baker both noticed defendant smelled like alcohol and had bloodshot, watery eyes.

Baker asked defendant to sit in a chair on the porch because he appeared to be unsteady. Defendant angrily responded, "f[**]k you b[***]h." He continued swearing at the officers and accused them of harassing him. Galutira told defendant he was going to be arrested for being drunk in public. Defendant then lifted his hands to chest level, balled his fists, told Galutira he was not going to jail and that he would fight Galutira, and walked toward Galutira. Defendant attempted to push Galutira but Galutira stepped out of the way of the attempted push then tackled defendant to the ground. Officer Shaun Manuele arrived soon before defendant attempted to fight Galutira. Manuele knew defendant to be "aggressive" based on his prior contact with defendant.

Defendant continued to "actively resist" on the ground by kicking his legs and attempting to tuck his hands under his torso to avoid handcuffing. Galutira held defendant down on his upper body and Baker restrained his lower body. Galutira repeatedly told defendant to stop resisting but defendant continued to struggle. Manuele, Galutira, Baker, and Rivera placed defendant in handcuffs.

Manuele then drove defendant to the Delano Police Department for booking. During the drive, defendant yelled and appeared agitated. When Manuele and defendant arrived at the booking room, defendant said to Manuele, "I'll kill you the next time I see you. F[**]k you, mother f[**]ker. I'll kill your family as well as your kids." He also threatened to "cut [Manuele's] throat and f[**]k [Manuele's] sister as soon as he got out of jail." Manuele did not respond to defendant because he believed "any other remarks to him would … further agitate him." Defendant appeared to be very angry and Manuele

took his threats seriously. Manuele testified that defendant's statements placed him in "[s]ustained fear for himself and [his] family."

After defendant was booked at the Delano Police Department, Baker assisted another officer in transporting defendant to a patrol car to be taken to the Bakersfield jail. As Baker and the other officer placed defendant into the patrol vehicle, defendant said to Baker, "[F**]k you slut. I'm going to f[**]king kill you. Just watch." In making the statement, defendant clenched his fists, tightened his jaw, and frowned at Baker. Baker took the threat seriously because of how angry defendant was and how aggressively he behaved toward her on this occasion and in previous encounters.

## DISCUSSION

### Sufficiency of the Evidence

Defendant contends that the evidence was insufficient to establish that (1) he intended his words to be understood as threats, (2) the threats involved the immediate prospect of execution of the threat, or (3) Baker or Manuele were reasonably placed in sustained fear of immediate execution of any threat. We disagree. The criminal threats convictions were supported by sufficient evidence.

" 'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] … We do not reweigh evidence or reevaluate a witness's credibility.' [Citations.] 'Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction.' " (*People v. Brown* (2014) 59 Cal.4th 86, 105–106.)

4.

"The standard of review is the same in cases in which the People rely … on circumstantial evidence." (*People v. Stanley* (1995) 10 Cal.4th 764, 792.) Circumstantial evidence may be sufficient on its own to prove the truth of a crime beyond a reasonable doubt. (*Id*. at p. 793.) Just because the circumstances may also reasonably support a different conclusion than the one drawn by the trier of fact does not warrant reversing the judgment. (*Ibid*.)

Defendant was charged with two counts of making criminal threats. (§ 422.) Our Supreme Court has explained section 422's requirements in terms of five elements: "The prosecution must prove '(1) that the defendant "willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person," (2) that the defendant made the threat "with the specific intent that the statement … is to be taken as a threat, even if there is no intent of actually carrying it out," (3) that the threat … was "on its face and under the circumstances in which it [was] made, … so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," (4) that the threat actually caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety," and (5) that the threatened person's fear was "reasonabl[e]" under the circumstances.' " (*In re George T.* (2004) 33 Cal.4th 620, 630; see CALCRIM No. 1300.)

Assessment of whether a statement qualifies as a criminal threat considers "all the surrounding circumstances and not just … the words alone." (*People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1340; accord, *People v. Solis* (2001) 90 Cal.App.4th 1002, 1013; *People v. Butler* (2000) 85 Cal.App.4th 745, 753.) Courts have repeatedly upheld criminal threats convictions under section 422 by relying on an assessment of a defendant's verbal and nonverbal conduct taken together. (See, e.g., *People v. Franz* (2001) 88 Cal.App.4th 1426, 1446 [a " 'shushing' " noise combined with a throat-slashing gesture "constitute[d] substantial evidence of a verbal 'statement,' …

[threatening] to kill if the victim talked to the police"]; *People v. Martinez* (1997) 53 Cal.App.4th 1212, 1218, 1220 [the defendant's statements to victim, including " 'I'm going to get you,' " and " 'I'll get you,' " were sufficient to convey a threat where the defendant also approached the victim "quickly, … yelled and cursed at him, … got within very close proximity to his face, and … displayed very angry behavior"].)  The parties' history can also be considered as one of the relevant circumstances in determining whether a defendant intended his words to be taken as a threat.  (*People v. Mosley* (2007) 155 Cal.App.4th 313, 324; *People v. Gaut* (2002) 95 Cal.App.4th 1425, 1431.)

First, defendant contends that the evidence was insufficient to prove that he intended his statements to be understood as threats.  He essentially argues that he was too intoxicated for the jury to have found he intended his words to be considered threats.  We disagree.

"Section 422 'was not enacted to punish emotional outbursts, it targets only those who try to instill fear in others.' "  (*People v. Wilson* (2010) 186 Cal.App.4th 789, 805 (*Wilson*).)  Section 422 requires that a defendant form the specific intent that his words be taken as a threat.  (*In re George T.*, *supra*, 33 Cal.4th at p. 630.)  A defendant's voluntary intoxication is therefore relevant to showing whether he "actually formed a required specific intent …."  (§ 29.4, subd. (b); see CALCRIM No. 3426.)

Here, the jury heard evidence of defendant's intoxication.  As defendant notes, when the officers found him, he appeared to be asleep on the lawn or the patio of a residence.  The officers detected an odor of alcohol emanating from defendant, his eyes were bloodshot, his speech was slow and slurred, and he had difficulty standing.  However, defendant also appeared to recognize Baker and said, "[O]h, it's you[,]" when he saw her.  He appeared to understand that the officers intended to arrest him based on his response that he was "not going to jail" and that he would "fight [Galutira] first."  Further, the language of defendant's threats to kill the officers was unambiguous and supported an inference that he intended that his words be understood to be threats.

6.

Indeed, after threatening Baker, defendant told her to "[j]ust watch[,]" suggesting that he intended her to believe that he would follow through on his threat. In sum, while there was evidence that defendant was intoxicated, there was also evidence that he understood what was happening around him, that he had been violent with officers on previous occasions, that he attempted to fight an officer on this occasion, and that he intended to threaten Baker and Manuele with future violence. The evidence was such that a reasonable jury could have concluded that defendant was able to form the specific intent that Baker and Manuele understood his words to be threats.

Second, defendant contends that there was insufficient evidence for the jury to find the requisite immediacy of his threats. In support of his contention, he emphasizes that there was no evidence that he "did anything to follow up on the statements" or acted with physical violence when he made the statements. Again, we disagree.

" 'To constitute a criminal threat, a communication need not be *absolutely* unequivocal, unconditional, immediate, and specific. The statute includes the qualifier "so" unequivocal, etc., which establishes that the test is whether, in light of the surrounding circumstances, the communication was *sufficiently* unequivocal, unconditional, immediate, and specific as to convey to the victim a gravity of purpose and immediate prospect of execution.' " (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1433.) "While the third element of section 422 also requires the threat to convey ' "a gravity of purpose and an immediate prospect of execution of the threat," ' it 'does not require an immediate ability to carry out the threat.' " (*Wilson*, *supra*, 186 Cal.App.4th at pp. 807, 816.) The word " 'immediate,' " as used in section 422, means "that degree of seriousness and imminence which is understood by the victim to be attached to the *future prospect* of the threat being carried out …." (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1538, fn. omitted.) A threat is not insufficient because it does " 'not communicate a time or precise manner of execution, section 422 does not require those details to be expressed. It is enough to threaten "death or great bodily

injury to another person." ' " (*Wilson*, at p. 809, italics omitted; *People v. Franz* (2001) 88 Cal.App.4th 1426, 1449 [threat was sufficiently immediate even where the defendant threatened the victim in the presence of a police officer and the officer led defendant from the scene because the defendant had already been violent with the victims and the safety offered by the officer's presence was not permanent].)

In *Wilson*, the defendant was an inmate at California Correctional Institution, Tehachapi. (*Wilson*, *supra*, 186 Cal.App.4th at p. 795.) While in custody, defendant looked at a correctional officer and told him, " 'I get out in ten months. I find people. That's what I do, and I'm going to find you, and I'm going to blast you.' " (*Id.* at p. 798, italics omitted.) The defendant repeated a similar threat twice more to the correctional officer while in custody. (*Id.* at pp. 798–799.) While the defendant was in custody and did not threaten to immediately harm the correctional officer, the court found that the "threat was ' "so unequivocal, unconditional, immediate, and specific as to convey to the [correctional officer], a gravity of purpose and an immediate prospect of execution of the threat." ' " (*Id.* at p. 814.) The defendant "unequivocally told [the correctional officer] that he would carry out that threat when he was released from custody in precisely 10 months, thus giving the threat specificity, immediacy, and a date certain. … [The defendant] effectively made an appointment to kill [the correctional officer] at his earliest possible opportunity—he would perform the act the instant he was set free." (*Ibid*.)

Here, defendant told Manuele that he would "kill [him] the next time [defendant] s[aw] [him]." Defendant also threatened to "kill [Manuele's] family as well as [his] kids" and to "cut [Manuele's] throat and f[**]k [Manuele's] sister as soon as he got out of jail." Defendant told Baker, whom he had been violent toward in the past, that he was going to "f[**]king kill [her]. Just watch." Defendant told both officers that he would kill them. He was very explicit with Manuele that he would kill him upon his release from jail. Although defendant did not set a timeframe for his threat to Baker's life, " '[a] threat is sufficiently specific where it threatens death or great bodily injury. A threat is not

8.

insufficient simply because it does "not communicate a time or precise manner of execution, section 422 does not require those details to be expressed." ' " (*Wilson*, *supra*, 186 Cal.App.4th at p. 816.) Defendant's threats to Manuele and Baker were so unequivocal, unconditional, immediate, and specific as to convey a gravity of purpose and an immediate prospect of execution of the threats.[2]

Third, defendant contends the evidence did not support a finding that Baker and Manuele were actually in sustained fear as a result of his threats. He argues that the officers' actions after he threatened them show that they were not in fear "beyond the moments of the encounter." We disagree.

Baker and Manuele both saw defendant attempt to fight Galutira; both had prior contact with defendant where he was aggressive toward them; both helped physically restrain defendant so he could be handcuffed; both described defendant as being very angry when he threatened to kill them; both noted defendant's threats in their reports; and both testified that they were in sustained fear as a result of defendant's threats. Defendant argues that because the officers did not take some additional step after defendant threatened them the sustained fear element was lacking. No authority supports that proposition. Substantial evidence supported the jury's conclusion that Baker and Manuele were in sustained fear for their safety as a result of defendant's threats and that their fears were reasonable.

**Section 654**

Defendant contends that count 1 (criminal threat made to Baker) or count 4 (resisting an executive officer, Baker) should have been stayed pursuant to section 654.

---

[2] The absence of evidence that the officers took additional precautions after defendant threatened them does not undermine our conclusion. Nor does the absence of evidence that defendant immediately attempted to follow through on his threats undermine our conclusion. Defendant threatened to kill the officers after having just attacked another officer. That was sufficient.

9.

The People disagree, arguing that the offenses had different criminal objectives. We agree with the People.

Section 654, subdivision (a) provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." The inquiry to determine whether separate sentences can be imposed pursuant to section 654 is "[w]hether a course of criminal conduct is divisible and therefore gives rise to more than one act." (*Neal v. State of California* (1960) 55 Cal.2d 11, 19; *People v. Correa* (2012) 54 Cal.4th 331, 335–336.) That inquiry turns on "the intent and objective" of the defendant. (*Correa*, at p. 336.) " 'If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' " (*Ibid.*) However, "multiple crimes are not one transaction where the defendant had a chance to reflect between offenses and each offense created a new risk of harm. [Citations.] 'Separate sentencing is permitted for offenses that are divisible in time ….' " (*People v. Felix* (2001) 92 Cal.App.4th 905, 915.) Similarly, if the "defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' " (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)

"The question of whether section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination." (*People v. DeVaughn* (2014) 227 Cal.App.4th 1092, 1113.) Where the trial court makes no express section 654 findings, we consider whether substantial evidence supports an implied finding of separate intent and objective. (*People v. Islas* (2012) 210 Cal.App.4th 116, 129.) " ' "We must 'view the evidence in a light most favorable to the respondent and presume in support of the [sentencing] order the

existence of every fact the trier could reasonably deduce from the evidence. [Citation.]' [Citation.]" ' " (*DeVaughn*, at p. 1113.)

Defendant argues that conduct underlying count 1—threatening to kill Baker—and count 4—resisting Baker by force—were pursuant to the same objective; namely, avoiding arrest. Defendant is mistaken. He had already been arrested, transported to the Delano police station, and booked when he threatened to kill Baker. There is no evidence to support defendant's suggestion that he threatened Baker in an attempt to avoid arrest (or escape custody). Indeed, based on defendant's threat to kill Manuele "as soon as he got out of jail[,]" it appeared that defendant was already resigned to going to jail when he threatened Baker. Moreover, the offenses occurred in different locations and were separated by a car ride where defendant rode separately from Baker to the police station. (See *People v. Felix*, *supra*, 92 Cal.App.4th at pp. 915–916.)

Substantial evidence supports the trial court's implied finding that the facts underlying counts 1 and 4 did not constitute an indivisible course of conduct and were not committed with a single intent and objective. We find no error.

## **DISPOSITION**

The judgment is affirmed.